**Joseph Richard REDNER,**
**Petitioner–Appellee,**

v.

**Charles S. DEAN, Sheriff of Citrus**
**County, Florida, Respondent–**
**Appellant,**

**Robert A. Butterworth, Respondent–**
**Appellee.**

No. 92–3033.

United States Court of Appeals,
Eleventh Circuit.

Aug. 26, 1994.

---

Russell W. LaPeer, Landt, Trow, & LaPeer, Ocala, FL, for appellant.

Luke Charles Lirot, Clearwater, FL, David S. Morgan, Asst. Atty. Gen., Belle B. Turner, Daytona Beach, FL, for appellee.

Before ANDERSON and BIRCH, Circuit Judges, and ALBRITTON *, District Judge.

* Honorable W. Harold Albritton, III, U.S. District Judge for the Middle District of Alabama, sitting by designation.

BIRCH, Circuit Judge:

In this habeas corpus appeal, we must decide the constitutionality of a Citrus County, Florida licensing ordinance (the "Ordinance") regulating adult entertainment establishments. The district court found the Ordinance facially unconstitutional because it lacked the procedural safeguards required for a system of prior restraint. The court therefore granted the writ of habeas corpus to the petitioner, who had been convicted of violating the Ordinance. The district court also granted the motion of the Florida Attorney General, releasing him from costs and from the responsibility for setting aside the petitioner's conviction. We affirm both of the district court's rulings.

## I. BACKGROUND

In March 1988, the petitioner-appellee, Joseph Redner, began preparations to open an adult entertainment facility in Citrus County, Florida. Redner planned to open the facility on March 25, and by March 24, he had acquired all necessary permits and licenses. At the time, Citrus County had no ordinance specifically governing adult entertainment facilities. On March 25, however, the Citrus County Board of County Commissioners (the "Board") held an emergency session and adopted temporary Citrus County Ordinance No. 88–05, entitled the "Citrus County Adult Entertainment Ordinance."[1]

The stated purpose of the Ordinance is "to establish reasonable and uniform regulations that will protect the health, safety, morals and general welfare of the people of Citrus County, Florida." Citrus County Ordinance No. 88–05, § 1–5. The Ordinance attempts to regulate adult entertainment establishments[2] within Citrus County by requiring operators of such facilities to obtain a license from the County Administrator (the "Administrator").[3] *Id.* § 2–2(a).

In order to obtain a license, an operator must submit to the Administrator an application containing, among other things, the applicant's name, business designation, and criminal history; whether the applicant has had a previous license revoked or suspended; whether the applicant has any other licenses; and other information about the facility, including location, site plan, and a list of employees. *Id.* § 2–3(b). The Administrator must then send copies of the application to the Sheriff, the Department of Development Services, Fire Prevention, and the Health Department, whereupon each agency conducts an investigation. *Id.* § 2–4(a). If any of these investigations reveals that the proposed establishment will be in violation of any building, fire, health, or zoning statute, code, ordinance, or regulation, the agency must notify the Administrator. *Id.* § 2–4(b).

Section 2–5(c) provides the reasons for which the Administrator may deny a license.[4] The Administrator must make its decision to grant or deny a license within forty-five days

---

1. A copy of the Ordinance is attached as an APPENDIX, *infra.*

2. The Ordinance defines "Adult Entertainment Establishment" as "an adult bookstore, or an adult dancing establishment operated for commercial or pecuniary gain." Citrus County Ordinance No. 88–05, § 1A–7(d). An "Adult Bookstore" is defined as "an establishment which sells or rents adult material," unless such material is accessible only to employees and constitutes a small, specified percentage of the facility's business. *Id.* § 1A–7(a). An "Adult Dancing Establishment" is defined as "an establishment where employees display or expose specified anatomical areas to others, regardless of whether the employees actually engage in dancing." *Id.* § 1A–7(c). The Ordinance goes on to define "Adult Material," "Specified anatomical areas," and other relevant terminology. *See id.* § 1A–7.

3. The Ordinance also requires individual employees to obtain permits. *Id.* § 3–1(a).

4. Section 2–5(c)(1) provides that the Administrator shall deny an application for any of the following reasons:

(A) any of the Departments, excluding the Sheriff, has disapproved of the application;
(B) the application contains material false information;
(C) the applicant or any of the other individuals listed ... has a license under this Ordinance which has been suspended or revoked;
(D) the granting of the application would violate a statute or ordinance or an order from a court of law which effectively prohibits the applicant from obtaining an adult entertainment establishment license.
*Id.* § 2–5(c)(1).

of the filing of the application.[5] *Id.* § 2–5(a)(1). At the expiration of the forty-five-day time period, "the applicant may be permitted to begin operating the establishment for which a license is sought, unless and until the County Administrator notifies the applicant of a denial of the application and states the reason(s) for the denial." *Id.*

An applicant who is denied a license has fifteen days to appeal to the Board. *Id.* § 6–1(1). Upon receipt of the notice of appeal, the Clerk of the Board "shall schedule a hearing for as soon as the Board's calendar will allow." *Id.* § 6–1(2). "If, at the conclusion of the hearing, the Board finds that the license or permit should not have been denied ..., it shall so notify the County Administrator, who shall immediately grant ... the license...." *Id.* § 6–1(3).[6]

In the present case, Redner refused to comply with the Ordinance and opened his adult entertainment establishment without applying to the Administrator for a license. Within four days, Redner had been charged three times with violating the Ordinance by operating an adult entertainment establishment without a license. Seeking declaratory, injunctive, and compensatory remedies, Redner immediately brought an action under 42 U.S.C. § 1983 in the United States District Court for the Middle District of Florida challenging the constitutionality of the Ordinance.

Before the federal case went to trial, however, Redner was tried in state court for Citrus County, where he defended on the grounds that the Ordinance was unconstitutional. The court upheld the Ordinance and Redner was convicted of three counts of operating an adult entertainment establishment without a license. Redner's conviction was affirmed by the Florida Fifth Judicial Circuit Court, and the Florida Fifth District Court of Appeal denied discretionary review.

In February 1989, Redner's federal civil rights case went to trial in the Middle District of Florida. Refusing to interfere with the ongoing state criminal proceedings, the district court abstained from ruling on the constitutionality of the Ordinance. We affirmed the district court's abstention, but remanded the case for further proceedings concerning Redner's identical attacks on the constitutionality of the successor, permanent licensing ordinance, *Redner v. Citrus County,* 919 F.2d 646 (11th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 303, 116 L.Ed.2d 246, *and cert. denied,* —— U.S. ——, 112 S.Ct. 303, 116 L.Ed.2d 246 (1991). That case is being held in abeyance in the district court pending the outcome of this appeal.

In May 1991, Redner was to begin serving the sentences for his state criminal convictions. He filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court referred the petition to a magistrate judge, and on March 4, 1992, the magistrate judge issued a report and recommendation finding the Ordinance unconstitutional. The magistrate judge found that the Ordinance fails to provide the procedural safeguards necessary for a system of prior restraint because it does not place specific time limits on the decision-maker and does not provide for prompt judicial review. The district court adopted the magistrate judge's report and recommendation and granted Redner's petition for habeas corpus relief. The court directed the two respondents, Florida Attorney General Robert Butterworth and Citrus County Sheriff Charles Dean, to set aside Redner's convictions and discharge him from any restraint. The court also directed Butterworth and Dean to pay Redner's costs.

On May 28, 1992, Butterworth made a motion under Federal Rule of Procedure 59(e) to amend the civil judgment to place the responsibility for costs and for setting aside the conviction on Dean alone. The district court granted this motion. Dean

---

**5.** The time limit is 14 days for adult bookstores. *Id.* § 2–5(a)(2).

**6.** The Ordinance contains other provisions regulating the operation of adult entertainment establishments. Section 4 of the Ordinance contains general provisions for adult entertainment establishments, including regulations concerning the structure and design of adult dancing facilities. *Id.* § 4. Section 5 imposes criminal penalties for operating without licenses, allowing employees to engage in certain prohibited acts, allowing minors on the premises, and other violations of the Ordinance. *Id.* § 5.

timely appealed both the grant of the habeas petition and the decision to amend the judgment.[7] Redner and Butterworth are the appellees.

## II. DISCUSSION .

### A. Constitutionality Of The Ordinance

■ Dean challenges the district court's grant of Redner's motion for habeas corpus relief. He argues that the Ordinance withstands constitutional scrutiny because it contains adequate procedural safeguards. The district court's ruling that the Ordinance is unconstitutional is a question of law, which we review *de novo*. *United States v. Osburn*, 955 F.2d 1500, 1503 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 223, 121 L.Ed.2d 160, *and cert. denied*, —— U.S. ——, 113 S.Ct. 290, 121 L.Ed.2d 215 (1992).

■ At the outset, we reject Dean's argument that the activity regulated by the Ordinance is not protected by the First Amendment. We find it well settled that nude dancing is expressive conduct entitled to some degree of First Amendment protection. In *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (plurality opinion), eight of the nine Justices on the Supreme Court found that non-obscene nude dancing is within the outer perimeter of the First Amendment, albeit minimally so.[8] When faced with a fragmented Court, we may distill the various opinions down to their narrowest grounds of concurrence to derive any binding precedent. *See Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977); *International Eateries of Am., Inc. v. Broward County*, 941 F.2d 1157, 1159–61 (11th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992). Based on *Barnes* and other Supreme Court precedent, we find it beyond dispute that the conduct regulated by the Ordinance in the instant case is entitled to some minimal degree of First Amendment protection.

■ While it enjoys some degree of First Amendment protection, however, nude dancing is not immune from governmental regulation. Even activity protected by the First Amendment can be regulated if the regulation furthers a substantial government interest and constitutes only an incidental limitation on the expressive activity. *See United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968). In *Barnes*, for instance, the Supreme Court found that an Indiana statute requiring dancers to wear pasties and G-strings was not an impermissible infringement on the dancers' rights of freedom of expression. 501 U.S. at 567–68, 111 S.Ct. at 2461. The present case differs from *Barnes* in at least one important respect. While *Barnes* involved some incidental limitations on the conduct associated with the expressive activity, the instant case presents a complete restraint of protected expression.

The instant case is more analogous to another Supreme Court case, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). *FW/PBS* is the Supreme Court's most recent pronouncement on the prior restraint of nude dancing. Because it dealt with a licensing scheme similar

---

7. Redner filed a motion arguing that Dean did not properly perfect his appeal with respect to the constitutionality of the Ordinance. We agreed to carry this motion with the case. On February 23, 1994, we denied Redner's motion to strike. After oral argument, Redner filed a motion for reconsideration, which we denied on March 18, 1994.

8. Chief Justice Rehnquist, in the plurality opinion joined by Justices O'Connor and Kennedy, stated that several Supreme Court cases indicate that nude dancing "is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so." *Barnes*, 501 U.S. at 566, 111 S.Ct. at 2460. Jus-

tice Souter, in his concurrence, agreed with the plurality that "an interest in freely engaging in the nude dancing at issue here is subject to a degree of First Amendment protection." *Id.* at 581, 111 S.Ct. at 2468 (Souter, J., concurring in the judgment). The dissent, written by Justice White and joined by Justices Marshall, Blackmun, and Stevens, also agreed that nude dancing is expressive conduct within the parameters of the First Amendment. *Id.* at 587, 111 S.Ct. at 2471 (White, J., dissenting). Only Justice Scalia, in his concurrence, argued that the regulation of nude dancing "is not subject to First–Amendment scrutiny at all." *Id.* at 572, 111 S.Ct. at 2463 (Scalia, J., concurring in the judgment).

to the Citrus County Ordinance, it provides us with valuable insight.

In *FW/PBS,* the Supreme Court entertained a facial challenge to a Dallas licensing ordinance regulating sexually oriented businesses. Like the Citrus County Ordinance, the Dallas scheme regulated sexually oriented businesses with a system of zoning, licensing, and inspections. *FW/PBS* resulted in a plurality decision, with several concurrences and dissents; we must therefore attempt to find the narrowest ground of concurrence in the various opinions in order to derive the Court's holding. *See Marks,* 430 U.S. at 193, 97 S.Ct. at 993; *International Eateries,* 941 F.2d at 1159–61.

Justice O'Connor's plurality opinion, joined by Justices Stevens and Kennedy, analyzed the ordinance under *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). In *Freedman,* the Supreme Court held that any system of censorship that runs the risk of suppressing constitutionally protected expression must contain three procedural safeguards designed to obviate the dangers of censorship: (1) the burden of going to court to suppress the speech and the burden of proof once in court must lie with the censor; (2) any restraint prior to a judicial determination may only be for a specified brief time period in order to preserve the status quo; and (3) an avenue for prompt judicial review of the censor's decision must be available. *Id.* at 58–59, 85 S.Ct. at 739. In her plurality opinion in *FW/PBS,* Justice O'Connor found that the first of the *Freedman* procedural safeguards is not necessary in a licensing scheme regulating an entire business, as opposed to a scheme like that in *Freedman* involving the direct censorship of particular expressive material. *FW/PBS,* 493 U.S. at 229–30, 110 S.Ct. at 606–07. In the former situation, there is less a presumption of invalidity, and, since the applicant's entire livelihood is at stake, there is more incentive for the applicant to pursue judicial review. *Id.* at 229–30, 110 S.Ct. at 607. Justice O'Connor therefore found it unnecessary to place the burden of going to court on the censor and required only the second and third *Freedman* safeguards. Finding that these two procedural requirements were not

met, Justice O'Connor held the Dallas ordinance unconstitutional.

Justice Brennan, joined by Justices Marshall and Blackmun, filed an opinion concurring in the judgment. Justice Brennan's concurrence differed with the plurality only in that the concurrence would have required all three of the *Freedman* procedural safeguards. *Id.* 493 U.S. at 238–39, 110 S.Ct. at 611 (Brennan, J., concurring in the judgment). Nevertheless, Justice Brennan agreed that the ordinance failed to meet these procedural requirements.

In *FW/PBS,* therefore, six Justices agreed that a licensing ordinance, such as the one in question here, must contain, at a minimum, the latter two procedural safeguards from *Freedman:* specified brief time limits on the decisionmaker and prompt judicial review. We therefore scrutinize the Citrus County Ordinance to determine whether it meets these constitutional requirements.

### 1. *Time Limits On The Decisionmaker*

 The first procedural safeguard required by *FW/PBS* is that the expressive activity may only be restrained prior to judicial review for a specified brief time period in order to maintain the status quo. Section 2–5 of the Ordinance places a forty-five-day time limit on the Administrator's decision to grant or deny the license. We agree with other federal courts that have found similar time limits to be reasonable. *E.g., Wolff v. City of Monticello,* 803 F.Supp. 1568, 1574 (D.Minn.1992) (ninety days); *Ellwest Stereo Theater, Inc. v. Boner,* 718 F.Supp. 1553, 1571 (M.D.Tenn.1989) (sixty days). Nevertheless, two other provisions of the Ordinance create the risk that expressive activity will be suppressed for indefinite time periods.

First, under section 2–5, the forty-five-day time limit is illusory, in that the Administrator's failure to comply with the time limit does not necessarily allow the applicant to begin engaging in the expressive activity for which the license is sought. Section 2–5(a)(1) of the Ordinance provides that in the event the Administrator exceeds the 45–day time limit, "the applicant *may* be permitted to begin operating the establishment for which

a license is sought, unless and until the County Administrator notifies the applicant of a denial of the application." Citrus County Ordinance No. 88–05, § 2–5(a)(1) (emphasis added). Dean argues that the word "may" in the provision should be interpreted to mean "shall" because the Ordinance gives operators "an absolute right" to begin operating establishments immediately upon the expiration of the forty-five-day period. Appellant's Brief at 41. He contends that the Board has applied the provision in this manner and that we should defer to the Board's interpretation.

We disagree. Redner presents a facial challenge to the Ordinance, and we must analyze it as written. "The issue ... is whether the ordinance, on its face, meets the requirements of *FW/PBS.*" *Wolff,* 803 F.Supp. at 1575. We cannot depend on the individuals responsible for enforcing the Ordinance to do so in a manner that cures it of constitutional infirmities. Section 2–5 says that applicants *may* be permitted to begin operation; it does not say "shall." We do not read this language to create an absolute right to operate at the expiration of forty-five days. On its face, therefore, section 2–5(a)(1) risks the suppression of protected expression for an indefinite time period prior to any

action on the part of the decisionmaker or any judicial determination.

A second provision of the Ordinance also may result in the indefinite suppression of expressive activity. In the event the Administrator denies the license, section 6–1 provides the applicant fifteen days to appeal the decision to the Board. Citrus County Ordinance No. 88–05, § 6–1(1). The Ordinance then directs the Clerk of the Board to "schedule a hearing for *as soon as the Board's calendar will allow.*" *Id.* § 6–1(2) (emphasis added). No time limit is placed on the Board. Like section 2–5, this appeal mechanism creates the risk that protected expression will be restrained for an indefinite time period prior to any form of judicial review. Thus, based on these two provisions, we find that the Ordinance fails to impose reasonable time limits on the decisionmaker, as required by *Freedman* and *FW/PBS.*

### 2. Prompt Judicial Review

■ The next *Freedman* procedural safeguard required by the Supreme Court in *FW/PBS* is the assurance of prompt judicial review. The Court, however, has not clarified exactly what type of judicial review is sufficient to fulfill this requirement, and our Circuit has never squarely addressed the issue in the context of a licensing ordinance.[9]

**9.** Our review of the relevant caselaw reveals that most courts have taken one of two tacks in interpreting the requirement of prompt judicial review. In the *Freedman* case itself, the Court was unclear as to exactly what type of judicial review was required. In later cases, however, the Court indicated that the statute, regulation, or ordinance itself must explicitly provide for prompt judicial review of the decision to suppress expressive activity. *E.g., Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 561–62, 95 S.Ct. 1239, 1248, 43 L.Ed.2d 448 (1975). In *Southeastern Promotions,* the Court reviewed a municipal board's decision to reject an application to perform the musical "Hair" at a city auditorium. Within a few days of the denial, the federal district court had held hearings on a motion for a preliminary injunction. The court denied the preliminary injunction, but within five months the district court heard the merits of the action for an injunction. Nevertheless, the Supreme Court held that the procedural safeguards of *Freedman* were lacking because "[t]he board's system did not provide a procedure for prompt judicial review." *Id.* at 561, 95 S.Ct. at 1248. The Court thus implied that a state's statutory or common-law mechanisms for review of adminis-

trative decisions does not satisfy the procedural requirements of *Freedman.*

The second interpretation of "prompt judicial review" has been articulated most clearly by the Seventh Circuit in *Graff v. City of Chicago,* 9 F.3d 1309 (7th Cir.1993) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994). There, the court reviewed a Chicago licensing ordinance regulating newsstands. The ordinance made no mention of judicial review. The court stated:

As an initial matter, it is not clear why the Court in *Freedman* set out the apparent requirement that an ordinance such as this explicitly provide for prompt judicial review. A person always has a judicial forum when his speech is allegedly infringed. [Neither party] argues that the judiciary cannot hear challenges to this ordinance simply because it does not have a specific provision designating a review process.

*Id.* at 1324. The court went on to find that Illinois's common-law writ of certiorari was the appropriate method for reviewing administrative agency decisions and that such review was a sufficient procedural safeguard. *Id.* at 1325. The court acknowledged that Supreme Court

Nevertheless, we find that the Citrus County Ordinance is inadequate under any interpretation of "prompt judicial review" because it creates the risk that expressive activity could be suppressed indefinitely prior to any judicial review of the decision to deny a license.

As we noted above,[10] section 6–1 of the Ordinance creates a situation where the denial of a license by the Administrator could result in the suppression of expressive activity for an indefinite period of time. After an applicant appeals to the Board, the Ordinance provides no specific time frame in which the Board must schedule a hearing or reach a decision. During this time, judicial review of the Administrator's decision would not be available because the administrative action would still be pending.

Dean argues that prompt judicial review is available in spite of this problem. He contends that an applicant may forgo the appellate process provided by the statute and proceed immediately to Florida state court via Florida's common-law writ of certiorari. We reject Dean's argument for two reasons. First, we find it repugnant to the principle of due process that a county ordinance could set such a trap for the unwary applicant. To hold that an aggrieved applicant who follows the appellate procedure provided by the Ordinance risks foreclosing his opportunity for prompt judicial review is a leap in logic we are unprepared to take.

Second, an applicant who refuses to appeal to the Board, as provided by the Ordinance, runs the risk that a state court would decline review based on failure to exhaust administrative remedies. Under Florida law, exhaustion "is a question of judicial policy, not jurisdiction." *Florida Soc'y of Newspaper Editors, Inc. v. Florida Pub. Serv. Comm'n,* 543 So.2d 1262, 1266 (Fla.Dist.Ct.App.), *review denied,* 551 So.2d 461 (Fla.1989). Nevertheless, Florida law is clear that exhaustion of administrative remedies is a prerequisite for judicial review. "Where a method of appeal from an administrative ruling has been provided, such method must be followed to the exclusion of any other system of review. Where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act." *Florida Welding & Erection Serv., Inc. v. American Mut. Ins. Co.,* 285 So.2d 386, 389–90 (Fla.1973).

Dean argues that exhaustion does not prohibit an applicant from challenging the denial of a license in court because exhaustion is not required where a party challenges the constitutionality of a rule or regulation. While Dean is correct that exhaustion is not required for constitutional attacks, his argument misses the point. It assumes that an applicant's appeal of the denial of a license will always be a constitutional attack. We can envision other, non-constitutional grounds on which an applicant would challenge the denial of a license, any of which would require exhaustion of administrative remedies. An applicant posing a non-constitutional challenge to the denial of a license would therefore be barred from the court system unless he first exhausted his administrative remedies by appealing to the Board. And once this appeal is filed with the Board, the Ordinance provides no time limit in which the Board must schedule a hearing. Since Redner poses a facial challenge to the Ordinance, it must provide procedural safeguards for all applicants, not just those who might challenge the Ordinance on constitutional grounds. We thus reject Dean's argument

---

cases seemed to reject this view, but stated that the High Court had never directly addressed the argument. *Id.*

Although we have never addressed the issue squarely, our Circuit seems to adhere to the first school of thought. In *Central Fla. Nuclear Freeze Campaign v. Walsh,* 774 F.2d 1515 (11th Cir. 1985), we struck down a city ordinance requiring permits for demonstrations. Judge Henderson's concurrence, which was specifically accepted by the majority, focused on the fact that the licensing ordinance lacked a provision for prompt judicial review. *Id.* at 1526–27 (Henderson, J., concurring). Likewise, in *Miami Herald Pub. Co. v.*

*City of Hallandale,* 734 F.2d 666, 676 (11th Cir. 1984), we struck down a city licensing ordinance on the grounds that it lacked adequate procedural safeguards, stating that "the statute furnishes no means for judicial review, prompt or otherwise, of city commission decisions." In neither case, however, did we directly confront whether Florida's statutory or common-law means of judicial review were adequate procedural safeguards.

**10.** *See* discussion *supra* part II.A.1.

that the Citrus County Ordinance satisfies the procedural requirement of prompt judicial review.

### B. The Release Of Butterworth From Responsibility

 Dean also appeals the district court's decision to amend its judgment, thereby releasing Butterworth from costs and from the responsibility for setting aside the conviction. He maintains that the Florida Attorney General has a constitutional, statutory, and common-law duty to represent the State in this action. We review the district court's decision to amend the judgment for abuse of discretion. *Cable/Home Communication Corp. v. Network Prods, Inc.,* 902 F.2d 829, 859 (11th Cir.1990).

We find no such abuse of discretion in the district court's decision. Dean confuses the Attorney General's mandatory duty to represent the State with its discretionary authority to intervene in lawsuits in which the State has an interest. The instant case does not come within the Attorney General's mandatory duty.

Florida statutory law requires the attorney General to "appear in and attend to, in behalf of the state, all suits ... in which the state may be a party, or in anywise interested." Fla.Stat.Ann. § 16.01(4). Although Rule 4 of the Rules Governing Section 2254 Cases requires that the state attorney general be served, the advisory committee notes to that rule make clear that the attorney general "is not required to answer if it is more appropriate for some other agency to do so." 28 U.S.C. § 2254 Rule 4, advisory committee notes. Here, the habeas petition involved a conviction under a county ordinance. Redner was not a state prisoner, and no state statute or state official was involved. Thus, the State of Florida is neither a party nor does it have an interest in these proceedings. For these same reasons, this case does not require Butterworth to exercise his discretionary authority under the common law to intervene in cases where public interest requires. *See generally Thompson v. Wainwright,* 714 F.2d 1495, 1500 (11th Cir.1983), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 562 (1984). Therefore, we hold that

the district court did not abuse its discretion in amending the judgment to release Butterworth from responsibility in this case.

### III. CONCLUSION

Dean brought this appeal challenging the district court's grant of Redner's habeas corpus petition, setting aside his convictions under the Citrus County Adult Entertainment Ordinance. Dean also appeals the district court's decision to amend its judgment releasing Attorney General Butterworth from responsibility in the case. We have carefully reviewed both issues, and, finding no reversible error, we AFFIRM.

### APPENDIX

### ORDINANCE NO. 88-05

AN ORDINANCE OF CITRUS COUNTY, FLORIDA, TO BE KNOWN AS THE "ADULT ENTERTAINMENT ORDINANCE"; PROVIDING GENERAL PROVISIONS, FINDINGS OF FACT AND DEFINITIONS; PROVIDING PROVISIONS CONCERNING LICENSING ENTERTAINMENT ESTABLISHMENTS; PROVIDING PROVISIONS CONCERNING PERMITTING OF EMPLOYEES OF ADULT ENTERTAINMENT ESTABLISHMENTS; PROVIDING PROVISIONS CONCERNING REQUIREMENTS FOR ADULT ENTERTAINMENT ESTABLISHMENTS; PROVIDING CRIMINAL PROVISIONS; PROVIDING PROVISIONS REGARDING SUSPENSION AND REVOCATION OF LICENSE; PROVIDING PROVISIONS REGARDING SUSPENSION AND REVOCATION OF PERMIT; PROHIBITING ESTABLISHMENTS FROM OPERATING BETWEEN HOURS OF 2:00 A.M. AND 9:00 A.M.; PROHIBITING HOLES IN WALLS OF ADULT BOOTHS; PROHIBITING THE ALTERATION OF A LICENSE OR PERMIT; PROHIBITING FALSE STATEMENT OR FALSE INFORMATION IN APPLYING FOR A LICENSE OR PERMIT; PROVIDING FOR SEVERABILITY; PROVIDING FOR EMER-

GENCY ENACTMENT AND AN EF-
FECTIVE DATE.

BE IT ORDAINED BY THE BOARD OF
COUNTY COMMISSIONERS OF CITRUS
COUNTY, FLORIDA:

*SECTION 1. GENERAL PROVISIONS*

*Section 1-1. Title.* This Ordinance shall
be known and may be cited as the "Citrus
County Adult Entertainment Ordinance".

*Section 1-2. Authority.* The Adult En-
tertainment Ordinance is enacted under the
Home Rule Power of Citrus County, Florida,
in the interest of the health, peace, safety,
morals, and general welfare of the people of
Citrus County, and under the authority of
Citrus County to regulate the sale and con-
sumption of alcoholic beverages under the
Twenty–First Amendment to the Constitu-
tion of the United States.

*Section 1-3. Scope.* The Adult Enter-
tainment Ordinance shall be effective
throughout Citrus County, Florida, except
that no provision of this Ordinance that con-
flicts with a provision of an Ordinance of any
municipality within Citrus County, Florida,
shall be effective within such municipality.

*Section 1-4. Construction.* The Adult
Entertainment Ordinance shall be liberally
construed to accomplish its purpose of licens-
ing, regulating and dispersing adult enter-
tainment and related activities. Unless oth-
erwise indicated, all provisions of this Ordi-
nance shall apply equally to all persons, re-
gardless of sex. Masculine pronouns, such
as "he", "his", and "him", as employed in this
Ordinance, shall also be construed to apply to
feminine pronouns and neutral pronouns, un-
less the context suggests otherwise. Words
used in the singular number shall include the
plural number, unless the context suggests
otherwise.

*Section 1-5. Purpose.* The intent of the
Board of County Commissioners of Citrus
County, Florida, in adopting the Adult En-
tertainment Ordinance is to establish reason-
able and uniform regulations that will protect
the health, safety, morals and general wel-
fare of the people of Citrus County, Florida.

*Section 1-6. Findings of Fact.* Based on
evidence and testimony concerning the ad-
verse secondary effects of adult uses on the
community presented at public hearings be-
fore the Board of County Commissioners of
Citrus County, Florida, and on the findings
incorporated in the *City of Renton v. Play-
time Theaters, Inc.,* 106 S.Ct. 925 (1986);
*Coleman A. Young v. American Mini The-
aters, Inc.,* 427 US 50, 49 LEd2d 310, 96 SCt
2440, reh den (US) 50 LEd2d 155, 97 SCt
191; Summary and presentation of reports,
studies and judicial opinions concerning the
adverse secondary effects of adult uses on
the community; *Northend Cinema, Inc. v.
Seattle,* 90 Wash.2d 709, 585 P.2d 1153
(1978); *A Report on Zoning and Other
Methods of Regulating Adult Entertainment
in Amarillo,* Texas dated September 12,
1977; *Regulation of Criminal Activity and
Adult Businesses.* City of Phoenix, May,
1979; Findings of the City Planning Com-
mission for the City of New York dated
January 26, 1977, *Detroit's Approach to Reg-
ulating the "Adult" Uses* Presented to Amer-
ican Institute of Planners Annual Confer-
ence, October 10, 1977; *Adult Entertain-
ment Businesses in Indianapolis.* An Anal-
ysis, 1987; and a presentation by the Citrus
County Sheriff detailing the potential crimi-
nal activities associated with adult uses in
Citrus County.

(a) Establishments exist or may exist
within Citrus County, Florida, where books,
magazines, motion pictures, prints, photo-
graphs, periodicals, records, novelties and/or
devices which depict, illustrate, describe or
relate to specified sexual activities are pos-
sessed, displayed, exhibited, distributed
and/or sold.

(b) Establishments exist or may exist
within Citrus County, Florida:

(1) where the superficial tissues of one
person are manipulated, rubbed, stroked,
kneaded, and/or tapped by a second person,
accompanied by the display or exposure of
specified anatomical areas;

(2) where dancers, entertainers, perform-
ers, or other individuals, who, for any form of
commercial gain, perform or are presented
while displaying or exposing any specified
anatomical area; or

(3) where straddle dancing occurs.

(c) The activities described in subsections (a) and (b) occur at establishments for the purpose of making a profit, and, as such, are subject to regulation by Citrus County, Florida, in the interest of the health, safety, morals and general welfare of the people of Citrus County.

(d) When the activities described in subsections (a) and (b) are present in establishments within Citrus County, Florida, other activities which are illegal, immoral, or unhealthful tend to accompany them, concentrate around them, and be aggravated by them. Such other activities include, but are not limited to, prostitution, pandering, solicitation for prostitution, lewd and lascivious behavior, exposing minors to harmful materials, possession, distribution and transportation of obscene materials, sale and possession of controlled substances, and violent crimes against persons and property.

(e) When the activities described in subsections (a) and (b) are present in establishments within Citrus County, Florida, they tend to attract an undesirable number of transients, blight neighborhoods, adversely affect neighboring businesses, lower property values, promote crime, particularly the kinds detailed in subsection (d) and ultimately lead residents and businesses to move to other locations.

(f) The establishments in which the activities described in subsections (a) and (b) occur are usually constructed, in part or in whole, of substandard materials, and are usually maintained in a manner reflecting disregard for the health and safety of the occupants.

(g) The activities described in subsections (a) and (b) frequently occur in establishments concurrent with the sale and consumption of alcoholic beverages.

(h) The concurrence of the sale and consumption of alcoholic beverages with the activities described in subsections (a) and (b) leads to an increase in criminal activity, moral degradation, and disturbances of the peace and order of Citrus County, Florida.

(i) The concurrence of the sale and consumption of alcoholic beverages with the activities described in subsections (a) and (b) is hazardous to the health and safety of those persons in attendance, depreciates the value of adjoining property, harms the economic welfare of Citrus County, Florida, and adversely affects the public's interest in the quality of life, tone of commerce, and community environment in Citrus County.

(j) In order to preserve and safeguard the health, safety, morals and general welfare of the people of Citrus County, Florida, it is necessary and advisable for Citrus County, Florida, to regulate the sale and consumption of alcoholic beverages at establishments where the activities described in subsections (a) and (b) occur.

(k) Employees of establishments at which the activities described in subsections (a) and (b) occur engage in a higher incidence of certain types of criminal behavior than employees of other establishments.

(l) Physical contact within establishments at which the activities described in subsections (a) and (b) occur between employees exhibiting specified anatomical areas and customers poses a threat to the health of both and promotes the spread of communicable and social diseases.

(m) In order to preserve and safeguard the health, safety, morals, and general welfare of the people of Citrus County, Florida, it is necessary and advisable for Citrus County, Florida, to regulate the conduct of owners, managers, operators, agents, employees, entertainers, performers, and customers at establishments where the activities described in subsections (a) and (b) occur.

(n) The potential dangers to the health, safety, morals, and general welfare of the people of Citrus County, Florida, posed by permitting an establishment at which the activities described in subsections (a) and (b) occur to operate without first obtaining a license under this Ordinance are so great as to require the licensure of such establishments prior to their being permitted to operate.

(o) Requiring employees of establishments at which the activities described in subsec-

tions (a) and (b) occur to obtain an adult entertainment permit before beginning to work in such establishments will help reduce the incidence of certain types of criminal behavior by facilitating the identification of potential witnesses or suspects, by preventing minors from working in such establishments, and by making it easier for health officials to control the spread of communicable and social diseases in such establishments.

(p) Prohibiting establishments at which the activities described in subsections (a) and (b) occur from operating within close proximity of education institutions, religious institutions, areas zoned for residential use, and parks, at which children are customarily found, will serve to protect children from the adverse affects of the activities that accompany such establishments.

(q) Personal advertising within close proximity of public thoroughfares poses a traffic hazard and a threat to the safety of people using those thoroughfares.

(r) "Straddle dancing" does not contain any element of communication, and is therefore conduct rather than expression.

(s) "Straddle dancing" in establishments poses a threat to the health of the participants and promotes the spread of communicable and social disease.

*Section 1A–7. Definitions.* In the Adult Entertainment Ordinance, unless the context suggests otherwise:

(a) "Adult Bookstore" means an establishment which sells or rents adult material, unless the adult material is accessible only by employees and either the gross income from the sale or rental of adult material comprises less than ten percent (10%) of the gross income from the sale or rental of goods or services at the establishment or the individual items of adult material offered for sale or rental comprises less than twenty-five percent (25%) of the individual items publicly displayed at the establishment as stock in trade. It is an affirmative defense to an alleged violation of this Ordinance regarding operating an adult bookstore without an adult entertainment license if the alleged violator shows that the adult material is accessible only by employees and either the gross income from the sale or rental of adult material comprises less than ten percent (10%) of the gross income from the sale or rental of goods or services at the establishment, or the individual items of adult material offered for sale or rental comprise less than twenty-five percent (25%) of the individual items publicly displayed at the establishment as stock in trade.

(b) "Adult Booth" means a small enclosure inside an adult entertainment establishment accessible to any person, regardless of whether a fee is charged for access. The term "adult booth" includes, but is not limited to, a "peep show" booth, or other booth used to view "adult material". The term "adult booth" does not include a foyer through which any person can enter or exit the establishment, or a restroom.

(c) "Adult Dancing Establishment" means an establishment where employees display or expose specified anatomical areas to others, regardless of whether the employees actually engage in dancing.

(d) "Adult Entertainment Establishment" means an adult theater, an adult bookstore, or an adult dancing establishment operated for commercial or pecuniary gain. ("Operated for commercial or pecuniary gain" shall not depend upon actual profit or loss. Also, "operated for commercial or pecuniary gain" shall be presumed where the establishment has an occupational license.) An establishment with an adult entertainment license is presumed to be an adult entertainment establishment.

(e) "Adult Material" means any one or more of the following, regardless of whether it is new or used:

(1) Books, magazines, periodicals or other printed matter, or photographs, films, motion pictures, video cassettes, slides, or other visual representations, or recordings, or other audio matter, which have as their primary or dominant theme matter depicting, illustrating, describing or relating to specified sexual activities or specified anatomical areas; or

(2) Instruments, novelties, devices or paraphernalia which are designed for use in connection with specified sexual activities.

(f) "Adult Motel" means any motel, hotel, boarding house, rooming house or other place of temporary lodging which includes the word "adult" in any name it uses or otherwise advertises the presentation of films, motion pictures, video cassettes, slides or other photographic reproductions, which have as their primary or dominant theme matters depicting, illustrating or relating to specified sexual activities or specified anatomical areas. The term "adult motel" is included within the definition of "adult theater".

(g) "Adult Theater" means an establishment which, except as set forth in the final sentence of this paragraph, consists of an enclosed building, or a portion or part of an enclosed building, or an open-air area used for viewing by persons of films, motion pictures, video cassettes, slides, or other photographic reproductions which have as their primary or dominant theme matters depicting, illustrating or relating to specified sexual activities or specified anatomical areas. "Adult motels" are included within the definition of "adult theater". An establishment which has "adult booths" is considered to be an "adult theater".

(h) "Alcoholic Beverage" means a beverage containing more than one percent (1%) of alcohol by weight.

(1) It shall be prima-facie evidence that a beverage is an alcoholic beverage if there is proof that the beverage in questions was or is known as whiskey, moonshine whiskey, shine, rum, gin, tequila, vodka, scotch, scotch whiskey, brandy, beer, malt liquor, or by any other similar name or names, or was contained in a bottle or can labeled as any of the above names, or a name similar thereto, and the bottle or can bears the manufacturer's insignia, name, or trademark.

(2) Any person who, by experience in the handling or alcoholic beverages, or who by taste, smell, or drinking of such alcoholic beverages has knowledge of the alcoholic nature thereof, may testify as to his opinion about whether such beverage is an alcoholic beverage.

(i) "Board" means the Board of County Commissioners of Citrus County, Florida.

(j) "County Administrator" means the chief administrative officer or his designee.

(k) "Conviction" means a determination of guilt resulting from plea or trial, regardless of whether adjudication was withheld or whether imposition of sentence was suspended.

(l) "Department" means the Building Department, Fire Prevention Division, Health Department, Sheriff, Zoning and Permits Division, or the Department of Development Services, including the respective director, employees, and agents thereof.

(m) "Educational Institution" means a premises or site upon which there is an institution of learning for minors, whether public or private, which conducts regular classes and/or courses of study required for eligibility to certification by, accreditation to, or membership in the State Department of Education of Florida, Southern Association of Colleges and Secondary Schools, or the Florida Council of Independent School. The term "educational institution" includes a premises or site upon which there is a nursery school, kindergarten, elementary school, junior high school, senior high school, or any special institution of learning. However, the term "educational institution" does not include a premises or site upon which there is a vocational institution, professional institution or an institution of higher education, including a community college, junior college, four year college or university.

(n) "Employee" means a person who works or performs in an adult entertainment establishment, irrespective of whether said person is paid a salary or wage by the owner or manager of the premises.

(o) "Establishment" means a site or premises, or portion thereof, upon which certain activities or operations are being conducted for commercial or pecuniary gain. ("Operated for commercial or pecuniary gain" shall not depend upon actual profit or loss. Also, "operated for commercial or pecuniary gain"

shall be presumed where the establishment has an occupational license.)

(p) "Inspector" means a respective employee of the Health Department, Building Department, Zoning and Permits Division, Sheriff, or Fire Prevention Division who inspects premises licensed under this Ordinance and takes or requires the actions authorized by this Ordinance in case of violations being found on licensed premises, and who also inspects premises seeking to be licensed under this Ordinance and takes or requires corrections of unsatisfactory conditions found on the premises.

(q) "Licensee" means any person whose application for an adult entertainment establishment has been granted and who owns, operates or controls the establishment.

(r) "Operator" means any person who engages in or performs any activity which is necessary to or which facilitates the operation of an adult entertainment establishment, including but not limited to the licensee, manager, owner, doorman, bartender, disc jockey, sales clerk, ticket taker, movie projectionist, or supervisor.

(s) "Park" means a tract of land within a municipality or unincorporated area which is kept for ornament and/or recreation and which is maintained as public property.

(t) "Permittee" means a person who has obtained an adult entertainment permit pursuant to SECTION 3 of this Ordinance.

(u) "Person" includes, but is not limited to, an individual, associations, joint ventures, partnerships estates, trusts, business trusts, syndicates, fiduciaries, corporations, and all other or any other similar entity.

(v) "Private performance" means the display or exposure of any specified anatomical area by an employee at an adult entertainment establishment to a person other than another employee while the person is in an area not accessible during such display to all other persons in the establishment, or which the person is in an area in which the person is totally or partially screened or partitioned during such display from the view of all persons outside the area.

(w) "Religious institution" means a premises or site which is used primarily or exclusively for religious worship and related activities.

(x) "Specified anatomical areas" means:

(1) less than completely and opaquely covered:

(A) human genitals or pubic region; or

(B) cleavage of the human buttocks; or

(C) that portion of the human female breast encompassed within an area falling below the horizontal line one would have to draw to intersect a point immediately above the top of the areola (the colored ring around the nipple). This definition shall include the entire lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breast exhibited by a dress, blouse, shirt, leotard, bathing suit, or other wearing apparel, provided the areola is not so exposed.

(2) human male genitals in a discernibly turgid state, even if completely and opaquely covered.

(y) "Specified criminal act" means:

(1) A criminal violation of this Ordinance;

(2) Any felony;

(3) An offense under Chapter 794, Florida Statutes (Sexual Battery);

(4) An offense under Chapter 796, Florida Statutes (Prostitution);

(5) An offense under Chapter 800, Florida Statutes (Lewdness; Indecent Exposure);

(6) An offense under Chapter 826, Florida Statutes (Bigamy; Incest);

(7) An offense under Chapter 847, Florida Statutes (Obscene Literature; Profanity); or

(8) An offense under an analogous statute of a state other than Florida, or under an analogous ordinance of another county or city.

(z) "Specified sexual activities" means;

(1) human genitals in a state of sexual stimulation, arousal or tumescence; or

(2) acts of human analingus, beastiality, buggery, cunnilingus, coprophagy, coprophilia, fellation, flagellation, masochism, mastur-

bation, necrophilia, pederasty, pedophilia, sadism, sadomasochism, sapphism, sexual intercourse, sodomy, urolagnia or zooerasty; or

(3) fondling or other erotic touching of human genitals, pubic region, buttock, anus or female breast; or

(4) excretory functions as part of or in connection with any of the activities set forth in subsections (1) through (3).

(aa) "Straddle dance" also known as a "lap dance" or "face dance", means the use by an employee, of any part of his or her body to touch the genital or pubic area of a person while at the establishment, or the touching of the genital or pubic area of any employee with a person while at the establishment. It shall be a "straddle dance" regardless of whether the "touch" or "touching" occurs while the employee is displaying or exposing any specified anatomical area. It shall also be a "straddle dance" regardless of whether the "touch" or "touching" is direct or through a medium.

*Section 1-8. Regulation of Obscenity Subject to State Law.* It is not the intent of the Board to legislate with respect to matters of obscenity. These matters are regulated by state law.

*Section 1-9. Regulation of Massage Establishments Subject to State Law.* It is not the intent of the Board to legislate with respect to matters of massage establishments. These matters are regulated by state agency, the Department of Professional Regulation, Board of Massage, and by state law, Chapter 480, Florida Statutes.

*Section 1-10. Severability.* If any portion of this Ordinance, or any application thereof is declared to be void, unconstitutional or invalid for any reason, such portion or provision, or this application thereof, shall be severable from this Ordinance. The remaining portions and provisions of this Ordinance, and all applications thereof shall remain in full force and effect. No void, unconstitutional or invalid portion or proscribed provision, or application thereof, was an inducement to the enactment of this Ordinance.

## SECTION 2. LICENSING PROVISIONS

*Section 2-1. Responsibilities of Board, County Administrator and Departments.* Ultimate responsibility for the administration of this Ordinance is vested in the Board. The County Administrator or his designee is responsible for granting, denying, revoking, renewing, suspending, and cancelling adult entertainment licenses for proposed or existing adult entertainment establishments. The Sheriff is responsible for verifying information contained on an application pursuant to Section 2–3(b)(1)–(5) of this Ordinance, for inspecting any proposed, licensed or non-licensed establishment in order to ascertain whether it is in compliance with applicable criminal statutes and ordinances, and for enforcing applicable criminal statutes and ordinances, including those set forth at SECTION 5 of this Ordinance. In addition, the Sheriff is responsible for reviewing permit applications, as provided in SECTION 3. The Building Department is responsible for inspecting any proposed establishment for which a license is being applied for or any licensed establishment in order to ascertain whether it complies with or is complying this Ordinance and all applicable building codes, statutes, ordinances, and regulations in effect in Citrus County, Florida. The Division of Fire Prevention is responsible for inspecting any proposed establishment for which a license is being applied for or any licensed establishment in order to ascertain whether it complies with or is complying with SECTION 4 of this Ordinance and all applicable fire codes, statutes, ordinances and regulations in Citrus County. The Health Department is responsible for any proposed establishment for which a license is being applied for or any licensed establishment in order to ascertain whether it complies with or is complying with SECTION 4 of this Ordinance and all applicable health codes, statutes, ordinances, and regulations in effect in Citrus County. In addition, the Health Department is responsible for reviewing permit applications, as provided in SECTION 3. The Zoning and Permits Division of the Department of Development Services is responsible for ascertaining whether a proposed establishment for which a license is being applied for complies with all locational requirements of

this Ordinance, applicable portions of this Ordinance, all applicable zoning regulations in effect in Citrus County, and whether a licensed establishment is complying with SECTION 5 of this Ordinance and all applicable zoning regulations and land use laws in effect in Citrus County. The County Administrator is responsible for granting, denying, renewing, cancelling, suspending, and revoking permits for proposed or current permittees in accordance with SECTION 3 of this Ordinance.

*Section 2-2. Adult Entertainment License Required: Classifications of.*

(a) *Requirement.* No adult entertainment establishment shall be permitted to operate without having been first granted an adult entertainment license by the County Administrator under this Ordinance.

(b) *Classifications.* Adult entertainment establishment licenses referred to in this Ordinance shall be classified as follows:

(1) adult bookstore;

(2) adult theater; and

(3) adult dancing establishment.

(c) *Single Classification of License.* Any adult entertainment license for a particular adult entertainment establishment shall be limited to one classification of license.

*Section 2-3. Application Required for Adult Entertainment License; Contents of; Application Fee; Rejection of Incomplete Application; Consent by Applicant.*

(a) *Required.* Any person desiring to operate an adult entertainment establishment shall file with the County Administrator a sworn license application on a standard application form supplied by the County Administrator.

(b) *Contents of Application.* The completed application shall contain the following information and shall be accompanied by the following documents:

(1) if the applicant is:

(A) an individual, the individual shall state his legal name and any aliases and submit satisfactory proof that he is eighteen (18) years of age; or

(B) a partnership, the partnership shall state its complete name, and the names of all partners, whether the partnership is general or limited, and, if in existence, a copy of the partnership agreement; or

(C) a corporation, the corporation shall state its complete name, the date of its incorporation, evidence that the corporation is in good standing, the names and capacity of all officers, directors and principal stockholders, and, if applicable, the name of the registered corporate agent and the address of the registered office for service of process;

(2) if the applicant intends to conduct the establishment under a name other than that of the applicant, the establishment's fictitious name and the county of registration under Section 865.09, Florida Statutes (1987);

(3) whether the applicant or any of the other individuals listed pursuant to subparagraph (1) has, within the five (5) year period immediately preceding the date of the application, been convicted of a specific criminal act, and, if so, the specified criminal act involved, the date of conviction and the place of conviction;

(4) whether the applicant or any of the other individuals listed pursuant to subparagraph (1) has had a previous license under this Ordinance suspended or revoked, including the name and location of the establishment for which the license was suspended or revoked, as well as the date of the suspension or revocation, and whether the applicant or any other individuals listed pursuant to subparagraph (1) has been a partner in a partnership or an officer, director or principal stockholder of a corporation whose license under this Ordinance has previously been suspended or revoked, including the name and location of the establishment for which the license was suspended or revoked, as well as the date of the suspension or revocation;

(5) whether the applicant or any other individuals listed pursuant to subparagraph (1) holds any other licenses under this Ordinance and, if so, the names and locations of such other licensed establishments;

(6) the single classification of license for which the applicant is filing;

(7) the location of the proposed establishment, including a legal description of the property site, and a legal street address;

(8) the names of the employees for the proposed establishment, if known, or, if presently unknown a statement to that effect;

(9) the applicant's mailing address; and

(10) a site plan drawn to appropriate scale of the proposed establishment, including, but not limited to; (A) all property lines, right-of-way, and the location of the buildings, parking areas and spaces, curb cuts, and driveways; (B) all windows, doors, entrances and exits, fixed structural features, walls, stages, partitions, projection booths, admission booths, adult booths, concession booths, stands, counters and similar structures; (C) all proposed improvements or enlargements to be made, which shall be indicated and calculated in terms of percentage of increase in floor size.

(c) *Application Fee.* Each application shall be accompanied by a non-refundable fee of Two Hundred Dollars ($200.00). If the application for a license is approved and a license is granted, the fee shall be applied as a credit towards the annual license fee required for the first year pursuant to Section 2–7 of this Ordinance.

(d) *Rejection of Incomplete Application.* In the event the County Administrator determines or learns at any time that the applicant has not properly completed the application for a proposed establishment, he shall promptly notify the applicant of such fact and shall automatically reject the application.

(e) *Consent.* By applying for a license under this Ordinance, the applicant shall be deemed to have consented to the provisions of this Ordinance and to the exercise by the County Administrator and the Departments of their respective responsibilities under this Ordinance.

*Section 2–4. Investigation of Application.*

(a) Upon receipt of the application properly filed with the County Administrator and upon payment of the non-refundable application fee, the County Administrator shall immediately stamp the application as received and shall immediately thereafter send photocopies of the application to the Sheriff, the Department of Development Services, Fire Prevention, and the Health Department. Each department shall promptly conduct an investigation of the applicant, application and the proposed establishment in accordance with its responsibilities summarized in Section 2–1 of this Ordinance. At the conclusion of its investigation, each department shall indicate on the photocopy of the application its approval or disapproval of the application, date it, sign it, and, in the event it disapproves, it shall so state its reasons.

(b) A Department shall disapprove of an application if it finds that the proposed establishment will be in violation of any provision of this Ordinance or of any building, fire, health, or zoning statute, code, ordinance, or regulation. After its indication of approval or disapproval, each department shall immediately return the photocopy of the application to the County Administrator.

*Section 2–5. Grant; Denial.*

(a) *Time Period for Granting or Denying License.*

(1) The County Administrator shall grant or deny an application for an adult dancing establishment within forty-five (45) days from the date of its proper filing. Upon the expiration of the forty-five (45) day period the applicant may be permitted to begin operating the establishment for which a license is sought, unless and until the County Administrator notifies the applicant of a denial of the application and states the reason(s) for the denial.

(2) The County Administrator shall grant or deny an application for an adult bookstore or adult theater within fourteen (14) days from the date of proper filing. Upon the expiration of the fourteen (14) day, the applicant may be permitted to begin operating the establishment for which a license is sought, unless and until the County Administrator notifies the applicant of a denial of the application and states the reason(s) for that denial.

(b) *Granting of Application for License.* If each of the departments has approved of the application, the County Administrator

shall grant the application, notify the applicant of the granting, and issue the license to the applicant upon payment of the appropriate annual license fee provided in Section 2–6 and 2–7, with credit as provided in Section 2–3(c).

(c) *Denying of Application for License.*

(1) The County Administrator shall deny the application for any of the following reasons:

(A) any of the Departments, excluding the Sheriff, has disapproved of the application;

(B) the application contains material false information;

(C) the applicant or any of the other individuals listed pursuant to Section 2–3(b)(1) has a license under this Ordinance which has been suspended or revoked;

(D) the granting of the application would violate a statute or ordinance or an order from a court of law which effectively prohibits the applicant from obtaining an adult entertainment establishment license.

(2) If the County Administrator denies the application, he shall notify the applicant of the denial, and state the reason(s) for the denial.

(3) If a person applies for a license at a particular location within a period of nine (9) months from the date of denial of a previous application for a license at the location, and there has not been an intervening change in the circumstances which will probably lead to a different decision regarding the former reason(s) for denial, the application shall be rejected.

*Section 2–6. Contents of License; Terms of License; Renewals; Expiration; cancellation.*

(a) *Contents.* An adult entertainment license shall state on its face the name of the licensee, the name of the establishment, the street address of the establishment, the classification(s) of the license, the date of issuance, and the date of expiration.

(b) *Terms.* All licenses issued under this Ordinance shall be annual licenses which shall commence running on October 1, on which date they shall have been paid for, and shall expire on September 30 of the following year. If a license is issued after October 1, but by March 31 of the following year, the applicant shall pay the appropriate license fee. If a license is issued after March 31, but by October 1 of the same year, the applicant shall pay one-half the appropriate license fee.

(c) *Renewals.* Licenses shall be renewed annually. Subject to other provisions of this Ordinance, a licensee under this Ordinance shall be entitled to a renewal of his annual license from year to year, as a matter of course, by October 1 by presenting the license for the previous year and by paying the appropriate license fee.

(d) *Expiration.* A license that is not renewed under this Ordinance by October 1 of each year shall expire. An expired license may be renewed by November 30 of the same year upon presentation of an affidavit stating that no adult entertainment activity has taken place at the establishment subsequent to expiration, upon payment of the appropriate license fee, and upon payment of a penalty of ten percent (10%) of the appropriate license fee for the month of October, or fraction thereof, and an additional penalty of five percent (5%) of the appropriate license fee for the month of November, or fraction thereof.

(e) *Cancellation.* All expired licenses not renewed by November 30 shall be cancelled summarily by the County Administrator.

*Section 2–7. Annual License Fees; Levy of; Regulatory in Nature.*

(a) *Levy of License Fees.* There are hereby levied the following annual license fees under this Ordinance for an adult entertainment establishment;

(1) an establishment having a license for only an adult bookstore—seven hundred fifty dollars ($750.00)

(2) an establishment having a license for only an adult theater, as follows:

(A) having only adult booths—thirty-five dollars ($35.00) for each booth; or

(B) having only a hall or auditorium—three dollars and fifty cents ($3.50) for each seat; or

(C) having only an area outdoors designed to permit viewing by customers seated in vehicles—three dollars and fifty cents ($3.50) for each parking space; or

(D) having a combination of (A), (B), and/or (C)—the cumulative license fee applicable to each under (A), (B), and (C);

(E) adult motel—seven hundred fifty dollars ($750.00);

(3) an establishment having a license for only an adult dancing establishment—seven hundred fifty dollars ($750.00);

(4) an establishment having a license for two classifications—eight hundred dollars ($800.00);

(5) an establishment having a license for three classifications—nine hundred dollars ($900.00).

(b) *License Fees are Regulatory in Nature.* The annual license fees collected under this Ordinance are declared to be regulatory fees which are collected for the purpose of examination and inspection of adult entertainment establishments under this Ordinance and the administration thereof. The regulatory fees are in addition to and not in lieu of the occupational license taxes imposed by other Ordinances of Citrus County, Florida.

*Section 2–8. Records and Reports; Consent by Licensee.*

(a) *Records and Reports.* Each licensee shall keep such records and make such reports as may be required by the County Administrator and the Departments to implement this Ordinance and to carry out its purpose.

(b) *Consent.* By holding a license under this Ordinance, the licensee shall be deemed to have consented to the provisions of this Ordinance and to the exercise by the County Administrator and the Departments of their respective responsibilities under this Ordinance.

*Section 2–9. Transfer of License.*

(a) *Requirements for Transfer.* A licensee shall not transfer his license to another person, and thereby surrender possession, control, and operation of the licensed establishment to such other person, unless and until such other person satisfies the following requirements:

(1) obtains an amendment to the license from the Ordinance which provides that he is now the licensee, which amendment may be obtained only if he has completed and properly filed an application with the County Administrator setting forth the information called for under Section 2–3(b)(1)–(5), and (9), and the application has been granted by the County Administrator after approval by the Sheriff's Department; and

(2) in the event he has purchased the licensed establishment from the licensee, adduces satisfactory proof that the sale was bona fide; and

(3) pays a transfer fee of ten percent (10%) of the appropriate annual license fee.

(b) *Effect of Suspension or Revocation Procedures.* No license may be transferred pursuant to subsection (a) when the County Administrator has notified the licensee that suspension of revocation proceedings have been or will be brought against the licensee.

(c) *No Transfer to Different Location.* A licensee shall not transfer his license to another location.

(d) *Attempted Improper Transfer Void; License Abandoned.* Any attempted transfer of a license either directly or indirectly in violation of this Section is hereby declared void, and the license shall be deemed abandoned and shall revert to the County Administrator.

*Section 2–10. Changing Name of Establishment.* No licensee may change the name of an adult entertainment establishment unless and until he satisfies each of the following requirements:

(a) gives the County Administrator thirty (30) days notice in writing of the proposed name change;

(b) pays the County Administrator a three dollar ($3.00) change-of-name fee; and

(c) complies with Section 865.09, Florida Statutes (1985).

*Section 2–11. Suspension of License.*

(a) Violation of a Building, Fire, Health, or Zoning Statute, Code, Ordinance or Regulation. In the event a Department learns or finds upon sufficient cause that a licensed adult entertainment establishment is operating in violation of a building, fire, health, or zoning statute, code, ordinance or regulation, whether federal, state of local, contrary to the respective general requirements of Section 4–1(a), (b), (c), or (d), the Department shall promptly notify the licensee of the violation and shall allow the licensee a seven (7) day period in which to correct the violation. If the licensee fails to correct the violation before the expiration of the seven (7) day period the Department shall notify the County Administrator, who shall forthwith suspend the license, and shall notify the licensee of the suspension. The suspension shall remain in effect until the Department notifies the County Administrator in writing that the violation of the provision in question has been corrected.

(b) *Illegal Transfer.* In the event the County Administrator learns or finds upon sufficient cause that a licensee engaged in a license transfer contrary to Section 2–9, he shall forthwith suspend the license, and notify the licensee of the suspension. The suspension shall remain in effect until the County Administrator is satisfied that the requirements of Section 2–9(a) have been met.

(c) *Convictions for Violations of SECTION 5 of this Ordinance.*

(1) In the event three (3) or more violation of SECTION 5 of this Ordinance occur at an adult entertainment establishment within a two (2) year period, and convictions result from at least three (3) of the violations, the County Administrator shall, upon the date of the third conviction, suspend the license, and notify the licensee of the suspension. The suspension shall remain in effect for a period of thirty (30) days.

(2) In the event one (1) or more violations of SECTION 5 of this Ordinance occur at the establishment within a period of two (2) years from the date of the violation from which the conviction resulted for which the license was suspended for thirty (30) days under subsection (c)(1), but not including any

time during which the license was suspended for thirty (30) days, and a conviction results from one (1) or more of the violations, the County Administrator shall, upon the date of the first conviction, suspend the license again, and notify the licensee of the suspension. The suspension shall remain in effect for a period of ninety (90) days.

(3) In the event one (1) or more violations of SECTION 5 of this Ordinance occur within a period of two (2) years from the date of the violation from which the conviction resulted for which the license was suspended for ninety (90) days under subsection (c)(2), but not including any time during which the license was suspended for ninety (90) days, and a conviction results from one (1) or more of the violations, the County Administrator shall, upon the date of the first conviction, suspend the license again, and notify the licensee of the suspension. The suspension shall remain in effect for a period of one hundred eighty (180) days.

(4) The transfer of renewal of a license pursuant to this Ordinance shall not defeat the terms of subsection (c)(1)–(3).

(d) *Effective Date of Suspension.* All periods of suspension shall begin sixteen (16) days after the date the County Administrator mails the notice of suspension to the licensee or on the date the licensee delivers his license to the County Administrator, whichever occurs first.

*Section 2–12. Revocation of License.*

(a) *False Information.* In the event the County Administrator learns or finds upon sufficient cause that a license was granted based upon false information, misrepresentation of fact, or mistake of fact, he shall forthwith revoke the license, and notify the licensee of the revocation.

(b) *Convictions for Violation of SECTION 5 of this Ordinance.*

(1) In the event one (1) or more violations of SECTION 5 of this Ordinance occur at an adult entertainment establishment which has had a license suspended for a period of one hundred eighty (180) days pursuant to Section 2–9(c)(3), and the violation(s) occur within a period of two (2) years from the date of the violation from which the conviction re-

sulted for which the license was suspended for one hundred eighty (180) days, but not including any time during which the license was suspended for one hundred eighty (180) days, the County Administrator shall forthwith revoke the license, and notify the licensee of the revocation.

(2) The transfer or renewal of a license pursuant to this Ordinance shall not defeat the terms of subsection (b)(1).

(c) *Effect of Revocation.* If a license is revoked, the licensee shall not be allowed to obtain another adult entertainment license for a period of ten (10) years and no license shall be issued again to any other person for the location upon which the adult entertainment establishment was situated.

(d) *Effective Date of Revocation.* The revocation shall take effect sixteen (16) days after the date the County Administrator mails the notice of revocation to the licensee or on the date the licensee delivers his license to the County Administrator, whichever happens first.

### SECTION 3. PERMITTING PROVISIONS

*Section 3–1. Adult Entertainment Permit Required.*

(a) Subject to subsection (b), no individual may work in an adult entertainment establishment without having applied for and having been granted a temporary or permanent adult entertainment permit from the County Administrator under this Ordinance.

(b) An individual who is to engage exclusively in performing janitorial or maintenance services at an adult entertainment establishment, or an individual who is to engage exclusively in performing barbering or cosmetology pursuant to a license issued under, respectively, Chapters 476 or 477, Florida Statutes (1985), is exempt from subsection (a).

*Section 3–2. Application Requirement for Adult Entertainment Permit; Contents of; Application Fee; Rejection of Incomplete Application; Consent by Applicant.*

(a) *Required.* Any individual desiring to work in an adult entertainment establishment shall file with the County Administrator a sworn permit application on a standard application form supplied by the County Administrator.

(b) *Contents of Application.* The completed application shall contain the following information and shall be accompanied by the following documents:

(1) The applicant shall state his legal name and any aliases;

(2) The applicant shall submit satisfactory proof that he is at least eighteen (18) years of age, and a photocopy of such proof shall be retained by the County Administrator;

(3) The applicant shall furnish a set of his fingerprints which have been taken by the Sheriff;

(4) The applicant shall present a recent color photograph of himself which has been taken by the County Administrator;

(5) The applicant shall state his mailing address and, if different, his address of residence;

(6) The applicant shall reveal his driver's license number;

(7) The applicant shall state whether he has, within the five (5) year period immediately preceding the date of the application, been convicted of a specified criminal act, and if so, the specified criminal act involved, the date of conviction, and the place of conviction;

(8) The applicant shall indicate whether he or she has had a previous permit under this Code which has been suspended or revoked, and, if so, the date of the suspension or revocation;

(9) Any additional information which the County Administrator deems necessary to effectuate the language and purpose of this Ordinance.

(c) *Application Fee.* Each application for a permit shall be accompanied by a non-refundable fee of fifty dollars ($50.00). If the application for a permit is approved and a permit is granted, the fee shall be applied as

a credit towards the permit fee required pursuant to Section 2–7 of this Ordinance.

(d) *Rejection of Incomplete Application.* In the event the County Administrator determines or learns at any time that the applicant has not properly completed the application for a permit, he shall promptly notify the applicant of such fact, and shall automatically reject the application.

(e) *Consent.* By applying for a permit under this Ordinance, the applicant shall be deemed to have consented to the provisions of this Ordinance and to the exercise by the County Administrator, the Sheriff and, if applicable, the Health Department, of their respective responsibilities under this Ordinance.

*Section 3–3. Temporary Permit.* The County Administrator shall issue a temporary permit to an applicant on the date that the applicant properly files an application. The temporary permit shall automatically expire after fourteen (14) days.

*Section 3–4. Investigation of Application.* Upon receipt of an application properly filed with the County Administrator and upon payment of the non-refundable application fee, the County Administrator shall immediately stamp the application as received and shall immediately thereafter send a fingerprint card to the Sheriff, and, if the applicant has indicated an intention to work in an adult dancing establishment, notify the Health Department of the applicant's name and address. The County Administrator, and, if applicable, the Health Department, shall promptly conduct an investigation of the applicant in accordance with their respective responsibilities under Section 2–1 of this Ordinance.

*Section 3–5. Grant; Denial.*

(a) *Time Period for Granting or Denying Permit.* The County Administrator shall grant or deny any application within fourteen (14) days from the date of its proper filing.

(b) *Granting of Permit.* If the Sheriff, the County Administrator, and, if applicable, the Health Department, have each approved of the application, the County Administrator shall grant the application, notify the applicant of the granting, and issue a permit to the applicant.

(c) *Denying of Permit.*

(1) The County Administrator shall deny the application for any of the following reasons:

(A) the applicant is less than eighteen (18) years of age;

(B) the application contains material false information;

(C) the applicant has had a previous permit under this Ordinance which has been suspended or revoked; or

(D) the granting of the application would violate a statute or ordinance or an order from a court of law which prohibits the applicant from obtaining an adult entertainment permit.

(2) If the County Administrator denies the application, it shall notify the applicant of the denial, and state the reason(s) for the denial.

*Section 3–6. Contents of Permit; Scope; Term of Permit; Renewals; Expiration; Cancellation.*

(a) *Contents.* The permit shall contain the following:

(1) The permittee's legal name and any aliases;

(2) The permittee's residential address;

(3) The permittee's sex;

(4) The permittee's birth date;

(5) The permittee's signature;

(6) The color photograph of the permittee which was taken by the County Administrator;

(7) The expiration date of the permit; and

(8) The signature of the County Administrator.

(b) *Scope.* The permit shall entitle the permittee to work in any adult entertainment establishment.

(c) *Term.* All permits issued under this Ordinance shall remain valid for two (2) years from the date of issuance.

(d) *Renewal.* Permits shall be renewed on or before two (2) years from the date of issuance. A permittee shall be entitled to a renewal of his or her permit, as a matter of course, upon payment of a fifty dollar ($50.00) fee.

(e) *Expiration.* A permit that is not renewed on or before two (2) years from the date of issuance shall expire. An expired permit may be renewed within thirty (30) days upon presentment of an affidavit by the permittee stating that he has not engaged in any work at any adult entertainment establishment subsequent to expiration, upon payment of the permit fee of fifty dollars ($50.00), and upon payment of a penalty fee of ten dollars ($10.00).

(f) *Cancellation.* All expired permits not renewed within thirty (30) days shall be cancelled summarily by the County Administrator.

*Section 3–7. Permit Fee.*

The fee for a permit under this Ordinance shall be fifty dollars ($50.00).

*Section 3–8. Suspension of Permit.*

(a) *Conviction for Violation of SECTION 4 of this Ordinance.* In the event a permittee commits one (1) or more violations of SECTION 4 of this Ordinance, and a conviction results from at least one (1) of the violations, the County Administrator shall, upon the date of the conviction, suspend the permit, and notify the permittee of the suspension. The suspension shall remain in effect for a period of ninety (90) days.

(b) *Effective Date of Suspension.* The period of suspension shall begin sixteen (16) days after the date the County Administrator mails the notice of suspension to the permittee or on the date the permittee delivers his permit to the County Administrator, whichever happens first.

*Section 3–9. Revocation of Permit.*

(a) *Conviction for Violation of this Ordinance.* In the event a permittee commits one (1) or more violations of SECTION 5 of this Ordinance within a period of two (2) years from the date of the violation from which the conviction resulted for which the permit was suspended under Section 2–8, but not including any time during which the permit was suspended, and a conviction results from one (1) or more of the violations, the County Administrator shall, upon the date of the first conviction, revoke the permit, and notify the permittee of the revocation.

(b) *Effect of Revocation.* If a permit is revoked, the permittee shall not be allowed to obtain another adult entertainment permit for a period of five (5) years.

(c) *Effective Date of Revocation.* The revocation shall take effect sixteen (16) days after the date the County Administrator mails the notice of revocation to the permittee or on the date the permittee delivers his license to the County Administrator, whichever happens first.

## SECTION 4. PROVISIONS FOR ADULT ENTERTAINMENT ESTABLISHMENTS

*Section 4–1. General Requirements.*

Each adult entertainment establishment shall, regardless of whether it is licensed, observe the following general requirements:

(a) conform to all applicable building statutes, codes, ordinances, and regulations, whether federal, state or local;

(b) conform to all applicable fire statutes, codes, ordinances, and regulations, whether federal, state or local;

(c) conform to all applicable health statutes, codes, ordinances, and regulations, whether federal, state or local;

(d) conform to all applicable zoning regulations and land use laws, whether state or local;

(e) keep the adult entertainment license posted in a conspicuous place at the establishment at all times, which license shall be available for inspection upon request at all times by the public;

(f) opaquely cover each non-opaque area through which a person outside the establishment may otherwise see inside the establishment;

(g) on the first Monday of every month provide the County Administrator with a listing of all persons who are, or have been

employees at the establishment since the first Monday of the previous month, and their positions.

*Section 4-2. Adult Theater.*

In addition to the general requirements for an adult entertainment establishment contained in Section 4-1, an adult theater shall, regardless of whether it is licensed, observe the following special requirements:

(a) If the adult theater contains a hall or auditorium area, the area shall comply with each of the following provisions:

(1) have individual, separate seats, not couches, benches, or the like, to accommodate the maximum number of persons who may occupy the area;

(2) have a continuous main aisle alongside of the seating areas in order that each person seated in the areas shall be visible from the aisle at all times; and

(3) have a sign posted in a conspicuous place at or near each entranceway to the hall or auditorium area which lists the maximum number of persons who may occupy the hall or auditorium area, which number shall not exceed the number of seats within the hall or auditorium area.

(b) If the adult theater contains adult booths, each adult booth shall comply with each of the following provisions:

(1) have a sign posted in a conspicuous place at or near the entranceway which states the maximum number of persons who may occupy the booth, which number shall correlate with the number of seats in the booth;

(2) have a permanently open entranceway not less than two (2) feet wide and not less than six (6) feet high, not capable of being closed or partially closed by any curtain, door, or other partition which would be capable of wholly or partially obscuring any person situated in the booth;

(3) have individual, separate seats, not couches, benches, or the like, which correlate with the maximum number of persons who may occupy the booth;

(4) have a continuous main aisle alongside the booth in order that each person situated in the booth shall be visible from the aisle at all times; and

(5) have, except for the entranceway, walls or partitions of solid construction without any holes or openings in such walls or partitions.

(c) If the adult theater is designed to permit outdoor viewing by persons seated in automobiles, it shall have the motion picture screen so situated, or the perimeter of the establishment so fenced, that the material to be seen by those persons may not be seen from any public right-of-way, property zoned for residential use, religious institution, educational institution, or park.

*Section 4-3. Adult Dancing Establishment.*

In addition to the general requirements for an adult entertainment establishment contained in Section 4-1, an adult dancing establishment shall, regardless of whether it is licensed, observe the following special requirements:

(a) it shall have a stage provided for the display or exposure of any specified anatomical area by an employee to a person other than another employee consisting of a permanent platform (or other similar permanent structure) raised a minimum of eighteen (18) inches above the surrounding floor and encompassing an area of at least one hundred (100) square feet; and

(b) any area in which a private performance occurs shall:

(1) have a permanently open entranceway not less than two (2) feet wide and not less than six (6) feet high, which entranceway is not capable of being closed or partially closed by any curtain, door, or other partition which would be capable of wholly or partially obscuring any person situated in the area; and

(2) have a wall-to-wall, floor-to-ceiling partition of solid construction without any holes or openings, which partition may be completely or partially transparent, and which partition separates the employee from the person viewing the display.

## SECTION 5. CRIMINAL PROVISIONS

*Section 5-1. Operation of Establishment Without Valid Adult Entertainment License.*

It shall be unlawful for any person to be an operator of an adult entertainment establishment where the person knows or should know:

(a) that the establishment does not have an adult entertainment license for any applicable classification;

(b) that the establishment has a license which is under suspension;

(c) that the establishment has a license which has been revoked or cancelled; or

(d) that the establishment has a license which has expired.

*Section 5-2. Operation of Establishment Contrary to Certain Requirements.*

(a) It shall be unlawful for any person to be an operator of an adult entertainment establishment which does not satisfy all of the general requirements of Section 4-1.

(b) It shall be unlawful for any person to be an operator of an adult theater which does not satisfy all of the special requirements of Section 4-2.

(c) It shall be unlawful for any person to be an operator of an adult dancing establishment which does not satisfy all of the special requirements of Section 4-3.

*Section 5-3. Allowing Employee to Engage in Prohibited Acts.*

It shall be unlawful for an operator of an adult entertainment establishment, regardless of whether it is licensed under this Ordinance, to knowingly or with reason to know, permit, suffer, or allow any employee:

(a) to engage in a straddle dance with a person at the establishment;

(b) to contract or otherwise agree with a person to engage in a straddle dance with a person at the establishment;

(c) to engage in any specified sexual activity at the establishment;

(d) to, where alcoholic beverages are sold, offered for sale, or consumed, display or expose at the establishment less than completely and opaquely covered human genitals or pubic region, less than completely and opaquely covered cleavage of the human buttocks, less than completely and opaquely covered areola and nipple of the human female breast, or human male genitals in a discernibly turgid state, even if completely and opaquely covered;

(e) to display or expose at the establishment less than completely and opaquely covered human genitals or pubic region, less than completely and opaquely covered cleavage of the human buttocks, less than completely and opaquely covered areola and nipple of the human female breast, or human male genitals in a discernibly turgid state, even if completely and opaquely covered, unless such employee is continuously positioned away from any person other than another employee, and unless such employee is in an area as described in Section 5;

(f) to display or expose any specified anatomical area while simulating any specified sexual activity with any other person at the establishment, including with another employee;

(g) to engage in a private performance unless such employee is in an area which complies with the special requirements of Section 4-3(b)(1) and (b)(2);

(h) to, while engaged in the display or exposure of any specified anatomical area, intentionally touch any person at the adult entertainment establishment, excluding another employee;

(i) to intentionally touch the clothed or unclothed body of any person at the adult entertainment establishment, excluding another employee, at any point below the waist and above the knee of the person, or to intentionally touch the clothed or unclothed breast of any female person; or

(j) subject to Section 3-1(b), to work who has not applied for and obtained a permit under this Ordinance.

*Section 5-4. Advertising Prohibited Activity.*

It shall be unlawful for an operator of an adult entertainment establishment, regard-

less of whether it is licensed under this Ordinance, to advertise the presentation of any activity prohibited by any applicable state statute or local ordinance.

*Section 5-5. Minors Prohibited.*

It shall be unlawful for an operator of an adult entertainment establishment, regardless of whether it is licensed under this Ordinance, to knowingly, or with reason to know, permit, suffer, or allow:

(a) admittance to the establishment of a person under eighteen (18) years of age;

(b) a person under eighteen (18) years of age to remain at the establishment;

(c) a person under eighteen (18) years of age to purchase goods or services at the establishment; or

(d) a person to work at the establishment as an employee who is under eighteen (18) years of age.

*Section 5-6. Working at Establishment Which Does Not Have Valid Adult Entertainment License.*

It shall be unlawful for any person to work in an adult entertainment establishment that he knows or should know is not licensed under this Ordinance, or which has a license which is under suspension, has been revoked or cancelled, or has expired, regardless of whether he has applied for and obtained a temporary or permanent permit under this Ordinance.

*Section 5-7. Working Without Permit Prohibited.*

(a) Subject to Section 3-1(b), it shall be unlawful for any person to work in an adult entertainment establishment, regardless of whether it is licensed under this Ordinance, if the person has not applied for and obtained a temporary or permanent permit under this Ordinance.

(b) Subject to Section 3-1(b), it shall be unlawful for any person to work in an adult entertainment establishment, regardless of whether it is licensed under this Ordinance, unless the person has a temporary or permanent permit in his possession while working at the establishment.

(c) Subject to Section 3-1(b), it shall be unlawful for any person working in an adult entertainment establishment, regardless of whether it is licensed under this Ordinance, to fail to produce a temporary or permanent permit upon demand for inspection by any law enforcement officer.

*Section 5-8. Engaging in Prohibited Activity.*

It shall be unlawful for any employee of an adult entertainment establishment, regardless of whether it is licensed under this Ordinance:

(a) to engage in a straddle dance with a person at the establishment;

(b) to contract or otherwise agree with a person to engage in a straddle dance with a person at the establishment;

(c) to engage in any specified sexual activity at the establishment;

(d) to, where the employee knows or should know that alcoholic beverages are sold, offered for sale, or consumed, display or expose at the establishment less than completely and opaquely covered human genitals or pubic region, less than completely and opaquely covered cleavage of the human buttocks, less than completely and opaquely covered areola and nipple of the human female breast, or human male genitals in a discernibly turgid state, even if completely and opaquely covered;

(e) to display or expose at the establishment less than completely and opaquely covered human genitals or pubic region, less than completely and opaquely covered cleavage of the human buttocks, less than completely and opaquely covered areola and nipple of the human female breast, or human male genitals in a discernibly turgid state, even if completely and opaquely covered, unless such employee is continuously positioned away from any person other than another employee, and unless such employee is in an area as described in Section 4-3(a);

(f) to engage in the display or exposure of any specified anatomical area while simulating any specified sexual activity with any other person at the establishment, including with another employee;

(g) to engage in a private performance unless such employee is in an area which complies with the special requirements set forth at 4–3(b)(1) and (b)(2);

(h) to, while engaged in the display or exposure of any specified anatomical area, intentionally touch any person at the adult entertainment establishment, excluding another employee; or

(i) to touch the clothed or unclothed body of any person at the adult entertainment establishment, excluding another employee, at any point below the waist and above the knee of the person, or to touch the clothed or unclothed breast of any female person.

*Section 5–9. Touching of Employee by Person.*

(a) It shall be unlawful for any person in an adult entertainment establishment, other than another employee, to intentionally touch an employee who is displaying or exposing any specified anatomical area at the adult entertainment establishment.

(b) It shall be unlawful for any person in an adult entertainment establishment, other than another employee, to intentionally touch the clothed or unclothed breast of any employee, or to touch the clothed body of any employee at any point below the waist and above the knee of the employee.

*Section 5–10. Exceeding Occupancy Limit of Adult Booth.*

It shall be unlawful for any person to occupy an adult booth in which booth there are more people than that specified on the posted sign required by Section 4–2.

*Section 5–11. Use of Restrooms or Dressing Rooms*

Notwithstanding any provision indicating to the contrary, it shall not be unlawful for any employee of an adult entertainment establishment, regardless of whether it is licensed under this Ordinance, to expose any specified anatomical area during the employee's bona fide use of a restroom, or during the employee's bona fide use of a dressing room which is accessible only to employees.

*Section 5–12. Hours of Operation.*

(a) It shall be unlawful for any operator of an adult entertainment establishment to al-

low such establishment to remain open for business, or to permit any employee to engage in a performance, solicit a performance, make a sale, solicit a sale, provide a service, or solicit a service, between the hours of 2:00 a.m. and 9:00 a.m. of any particular day.

(b) It shall be unlawful for any employee of an adult entertainment establishment to engage in a performance, solicit a performance, make a sale, solicit a sale, provide a service, or solicit a service, between the hours of 2:00 a.m. and 9:00 a.m. of any particular day.

*Section 5–13. Alteration of License or Permit.*

(a) It shall be unlawful for any person to alter or otherwise change the contents of an adult entertainment license without the written permission of the County Administrator.

(b) It shall be unlawful for any person to alter or otherwise change the contents of an adult entertainment permit without the written permission of the County Administrator.

*Section 5–14. False Statement or False Information in Applying for License or Permit.*

(a) It shall be unlawful for any person applying for an adult entertainment license to make a false statement which is intended to facilitate the issuance of a license, or to provide false information which is intended to facilitate the issuance of a license.

(b) It shall be unlawful for any person applying for an adult entertainment permit to make a false statement which is intended to facilitate the issuance of a permit, or to provide false information which is intended to facilitate the issuance of a permit.

*Section 5–15. Violations Subject to Criminal Prosecution.*

Whoever violates any Section of SECTION 5 of this Ordinance may be prosecuted and punished as provided by Section 125.69, Florida Statutes (1985).

## SECTION 6. MISCELLANEOUS PROVISIONS

*Section 6–1. Appeals.*

(1) Subject to subsection 3–1(a)(2), within fifteen (15) days of the mailing of a notice of

denial of an application for a license or permit or a notice of suspension or revocation of a license or permit, the aggrieved party may file a notice of appeal with the Board.

(2) The notice of appeal shall be filed with the Clerk of the Board. The notice of appeal shall be accompanied by payment of a filing fee of fifty dollars ($50.00) to cover administrative costs. Upon receipt of the notice of appeal and upon payment of the accompanying fifty dollars ($50.00) filing fee, the Clerk shall schedule a hearing for as soon as the Board's calendar will allow. The Clerk shall provide the appellant with at least ten (10) days' notice of the time and place for the hearing.

(3) If, at the conclusion of the hearing, the Board finds that the license or permit should not have been denied, suspended, revoked, or cancelled, it shall so notify the County Administrator, who shall immediately grant or reissue the license or permit.

*Section 6–2. Notice.*

Any notice required under this Ordinance shall be accomplished by sending a written notification by certified mail to the mailing address set forth on the application for the license or a permit. This mailing address shall be considered the correct mailing address unless the County Administrator has been otherwise notified in writing.

*Section 6–3. Immunity from Prosecution.*

The County or any Department shall be immune from prosecution, civil or criminal, for reasonable, good-faith trespass upon an adult entertainment establishment while acting within the scope of its authority under this Ordinance.

*Section 6–4. Powers of Board.*

The Board may bring suit in the Circuit Court to restrain, enjoin or otherwise prevent the violation of this Ordinance.

*Section 6–5. Emergency Adoption and Effective Date.*

The Board finds that it is necessary, in order to protect the health, safety and welfare of the citizens of Citrus County, that this Ordinance become effective immediately upon its adoption. The effective date of this Ordinance shall be when a certified copy of the Ordinance has been accepted by the postal authorities of the U.S. Government for special delivery by registered mail to the Department of State.

DONE AND ADOPTED this 25th day of March, 1988.

BOARD OF COUNTY COMMISSIONERS OF CITRUS COUNTY, FLORIDA

BY: (s) <u>Nick Bryant</u>

 NICK BRYANT, CHAIRMAN

ATTEST:

(s) <u>Walt Connors</u>

WALT CONNORS, CLERK

APPROVED AS TO FORM AND CORRECTNESS:

(s) <u>James A. Neal, Jr.</u>

JAMES A. NEAL, JR.

ASSISTANT COUNTY ATTORNEY