William G. WARD, d/b/a Bourbon
Street South, Plaintiff,

v.

COUNTY OF ORANGE, Defendant.

No. 98–428–CIV–ORL–19B.

United States District Court,
M.D. Florida,
Orlando Division.

April 29, 1999.

Steven Gerald Mason, Law Office of Steven G. Mason, Orlando, FL, for plaintiff.

Joel D. Prinsell, Orange County Attorney's Ofice, Orlando, FL, Linda Sue Brehmer Lanosa, Orange County Attorney's Office, Litigation Unit, Orlando, FL, for Defendant.

## ORDER

FAWSETT, District Judge.

This cause came before the Court on the following matters:

(1) Defendant's Motion for Partial Summary Judgment as to Plaintiff's "As Applied" Claims Based on Ripeness or Lack of Jurisdiction (Doc. No. 16, filed January 19, 1999); Defendant's Memorandum in Support of Motion for Partial Summary Judgment (Doc. No. 97, filed January 19, 1999); and Plaintiff's Response to Four Motions for Summary Judgment (Doc. No. 147, filed February 10, 1999);

(2) Defendant's Motion for Partial Summary Judgment regarding Definition of "Adult Performance Establishment" (Doc. No. 98, filed January 19, 1999); Defendant's Memorandum of Law in Support of Motion for Partial Summary Judgment (Doc. No. 99, filed January 19, 1999); and Plaintiff's Response to Four Motions for Summary Judgment (Doc. No. 147, filed February 10, 1999);

(3) Defendant's Motion for Partial Summary Judgment as to the Shifting of the Burden of Proof (Doc. No. 100, filed January 19, 1999); Defendant's Memorandum in Support of Motion for Partial Summary Judgment as to the Shifting of the Burden of Proof (Doc. No. 101, filed January 19, 1999); and Plaintiff's Response to Four Motions for Summary Judgment (Doc. No. 147, filed February 10, 1999);

(4) Defendant's Motion for Partial Summary Judgment as to the Constitutionality of the Orange County Adult Entertainment Code (Doc. No. 102, filed January 19, 1999); Defendant's Memorandum of Law in Support of Motion for Partial Summary Judgment as to the Constitutionality of the Orange County Adult Entertainment Code (Doc. No. 103, filed January 19, 1999); and Plaintiff's Response to Four Motions for Summary Judgment (Doc. No. 147, filed February 10, 1999);

(5) Plaintiff's Motion for Summary Judgment (Doc. No. 133, filed January 26,

1999); Plaintiff's Memorandum in Support of Motion for Summary Judgment (Doc. No. 134, filed January 26, 1999); and Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 152, filed February 19, 1999);

(6) Plaintiff's Motion for Review of Magistrate Judge's Discovery Rulings (Doc. No. 160, filed March 1, 1999) and Defendant's Response to Motion for Review (Doc. No. 162, filed March 11, 1999);

(7) Defendant's Motion with Memorandum in Support to Strike Late–Filed Affidavit of Kelly Wellnitz (Doc. No. 161, filed March 4, 1999) and Plaintiff's Response to Defendant's Motion to Strike (Doc. No. 163, filed March 16, 1999);

(8) Plaintiff's Motion with Memorandum in Support to Exclude Consideration of Defendant's filings addressing B.G.'s Bar and Crazy Girls for purposes of Summary Judgment (Doc. No. 164, filed March 18, 1999) and Defendant's Response to Plaintiff's Motion to Exclude (Doc. No. 165, filed March 30, 1999);

(9) Notice of Conflict and Unopposed Motion by Defendant for a Trial Date after the First Week of the May Trial Term (Doc. No. 166, filed March 31, 1999);

(10) Defendant's Motion Requesting Court to Decline Supplemental Jurisdiction (Doc. No. 174, filed April 12, 1999); Defendant's Memorandum in Support of Motion Requesting Court to Decline Supplemental Jurisdiction (Doc. No. 175, filed April 12, 1999);

(11) Request by Defendant with Memorandum in Support for Judicial Notice (Doc. No. 179, filed April 12, 1999);

(12) Plaintiff's Motion to Continue Trial Due to Health Problems (Doc. No. 183, filed April 19, 1999) and Defendant's Response to Motion to Continue Trial (Doc. No. 184, filed April 21, 1999).

## I. BACKGROUND[1]

Plaintiff, William G. Ward, is the owner of a "swimsuit club"[2] operating under the name Bourbon Street South. According to Mr. Ward, the employees of his club do not perform in the nude.[3] (Doc. No. 6, Ward Aff., at 1). In fact, Mr. Ward claims that he "would not care if the hostesses wore long dresses down to their knees or ankles." *See id.* He also maintains that no alcohol is served at Bourbon Street. *See id.* at 2.

The simple goal of Bourbon Street, according to Mr. Ward, is the entertainment of customers. *See id.* In this regard, customers must purchase "Sweetheart Party Packages," ranging in price from twenty dollars to two hundred dollars. *See* (Doc. No. 1, Compl., Exh. 1). These packages entitle customers to, among other things, nonalcoholic beverages and "slow dances" with Bourbon Street performers, who are called Sweethearts. Mr. Ward theorizes that customers are willing to pay up to two hundred dollars for their clothed Sweethearts to join them in consuming nonalcoholic beverages and slow dances because "[p]eople like to talk to people." *See* (Doc. No. 6, at 2). He also noted that Sweethearts "make the customers feel good about themselves." *See id.*

Mr. Ward argues that his club is no different from any other mainstream dance studio with respect to the sexual gratification of the customers. In particular, he complains that Bourbon Street pro-

---

1. Several of the facts and arguments presented in the background section were taken from the submissions of the parties on Plaintiff's Motion for Preliminary Injunction. Mr. Ward incorporated such evidence into his Motion for Summary Judgment. *See* (Doc. No. 133).

2. A "swimsuit club" features female dancers who, in theory, do not appear without clothes. "Swimsuit clubs" are also referred to as

"juice bars" because no alcohol is served at such clubs.

3. The Court notes that Mr. Ward did not visit Bourbon Street at any time in 1998 and visited such establishment "infrequently, if at all" from 1991 through 1997. *See* (Doc. No. 167, Pretrial Statement, Admissions, at 12).

vides no more sexual gratification than Arthur Murray's Dance Studio:

> If an older woman wishes to learn to Waltz or "la bamba," she can go to Arthur Murray's and pay to have a man teach her to dance. Of course the woman finds this enjoyable and entertaining, otherwise she would not pay the fee. Does this mean that she is sexually gratified? ... If talking to a woman and dancing with a woman (slow dancing or otherwise) is sexually stimulating then virtually everything in life is sexually stimulating.

See id. at 4. Ultimately, he wonders how a performance can be classified as sexually stimulating "[i]f there is no sex involved." See id.

Defendant, Orange County, presented affidavits painting a much different picture of the activities occurring at Bourbon Street from the one rendered by Mr. Ward. For example, an agent of the Metropolitan Bureau of Investigation ("MBI"), a task force including, inter alia, Orange County law enforcement officers, averred that the Sweethearts at Bourbon Street "would rub their bodies against their male customers, press their genitals against those of the customers, expose their breasts, expose the lips of their vaginas, expose the cleavage of their buttocks, allow the customers to fondle their buttocks and exposed back, and often times would place their hands underneath the customers' shirt or fondle the customer's buttocks" while "slow dancing" with customers. See (Doc. No. 43, Winsett Aff., ¶ 4(e)). Additionally, Sweethearts would dance on an elevated stage when they were not slow dancing with customers. See id., ¶ 4(g). During these solo dances, the Sweethearts "simulated or actually engaged in masturbation of themselves or displayed their buttocks, genitals, or breasts." See id.

Orange County also submitted the affidavit of Frank D'Amico, a former employee of Bourbon Street. See (Doc. No. 44, Exh. A). Mr. D'Amico was employed by Bourbon Street for fourteen months. See id. During his employment, Mr. D'Amico "observed female dancers have their hands inside men's pants or have a towel over a male's penis and proceeded to masterbate [sic] him. Also[,] male customers were permitted to fondle females['] breasts and their pubic area."[4] Id.

Another former employee of Bourbon Street, Ramona Alma Fields, asseverated that she masturbated male customers while they digitally fondled her vagina.[5] (Doc. No. 57, Exh. 3–A). Ms. Fields claims that she was instructed to do so by the management of Bourbon Street. See id. Ms. Fields also stated that management observed her masturbating customers almost every night that she worked. See id. Furthermore, Ms. Fields claims that she saw a dancer engage in sexual intercourse with a customer inside Bourbon Street and that she saw other dancers perform fellatio on customers.[6] See id.

---

4. In a supplemental affidavit filed by Plaintiff, Mr. D'Amico indicates that the statement he provided to the MBI left out that "this activity seldom occurred" and that dancers would be fired if they were caught masturbating a customer. (Doc. No. 50, at 1). However, the Court notes that Mr. D'Amico signed his sworn, handwritten statement to the MBI on both pages of the statement. (Doc. No. 44, Exh. A). Also, it does not appear that Mr. D'Amico's statement is missing any pages that might have included this supplemental information. See id. Finally, Mr. D'Amico swore that he agreed to "**VOLUNTARILY** MAKE THE FOLLOWING STATEMENT WITHOUT THREAT, COERCION, OFFER OF BENEFIT OR FAVOR BY ANY PERSONS WHOMSOEVER." See id. (capitals and emphasis in original).

5. Mr. Ward challenges the veracity of Ms. Fields' statement. (Doc. No. 60, ¶ C). He claims that Ms. Fields is presently incarcerated on two felonies and that Ms. Fields worked at Bourbon Street for only nine days. See id.

6. Ms. Fields explained that a Bourbon Street employee walked around the club and "would let [Ms. Fields] know if it was okey [sic] to carry on with the sexual activity." See (Doc. No. 57, Exh. 3–A). This may explain why MBI officers were unable to verify personally

Frequently, dancers displayed the cleavage of their buttocks during slow dances and solo dances. (Doc. No. 45, Scholer Aff., ¶¶ 10, 13–14). A dancer also displayed the "right outer lips of her vagina" to an MBI agent. *See id.*, ¶ 13; *see also* (Doc. No. 57, Exh. 3–A, Fields Aff.) (stating that dancers revealed their vagina by pulling their panties back). On a different occasion, a dancer displayed her "untaped nipples" to an MBI agent. *See id.;* (Doc. No. 45, Scholer Aff., ¶ 18); *see also* (Doc. No. 57, Exh. 3–A, Fields Aff.) (stating that dancers revealed their breasts to customers). Finally, Mr. Ward admitted that the dancers at Bourbon Street were instructed on the "seventeen basic dance steps, including 'ring around the posies,' 'ride the pole,' 'thee babydoll kick,' 'cat crawl,' 'pole tricks,' 'the L'pose', and wave $100 move.'" *See* (Doc. No. 167, at 13).

The managers and employees who worked at Bourbon Street were employed by Centerfold Management Team, Inc., which is not a party to the lawsuit. *See* (Doc. No. 167, Pretrial Statement, Admissions, at 12). Moreover, such employees were not directly employed by Mr. Ward and, instead, were paid by Staff Leasing Corporation with which he contracted for services. *See id.* In addition, the dancers at Bourbon Street were independent contractors who were not paid a salary or wage by Mr. Ward. Finally, Mr. Ward did not file Form 1099s with the Internal Revenue Service for such dancers. *See id.*

Mr. Ward has not applied for an Orange County adult entertainment license from Orange County.[7] *See id.* at 11. In addition, code inspectors from Orange County have never cited Mr. Ward or Bourbon Street for a violation of the Adult Entertainment Code. *See id.* at 15. Moreover, Orange County's Code Enforcement Board

has never held a code enforcement proceeding or taken any action against Mr. Ward or Bourbon Street. *See id.* Finally, Orange County has never filed a lawsuit against Mr. Ward or Bourbon Street seeking to enjoin actions in violation of the Adult Entertainment Code at Bourbon Street. *See id.* However, several dancers and a manager at Bourbon Street, none of whom was an employee of Mr. Ward or Bourbon Street or a party in this case, have been arrested for violations of Orange County's Adult Entertainment Code. *See id.* at 12 and 15.

Mr. Ward seeks summary judgment on his facial and as-applied constitutional challenges to Orange County's Adult Entertainment Code ("Code"). *See* (Doc. No. 133). First, he argues that the Code cannot be constitutionally applied to Bourbon Street because no nude or obscene dancing is involved and no alcohol is served. Second, he argues that the Code is overbroad, content-based, arbitrary and capricious, vague, impinges upon commercial speech, and unconstitutionally shifts the burden of proof. Finally, he contends that the Code's definition of adult performance establishment in section 3–6 is not rationally related to a legitimate state interest. Orange County has moved for summary judgment on Mr. Ward's as-applied claims, overbreadth and vagueness challenges, shifting of burden challenge, and the constitutionality of the Code. *See* (Doc. Nos.96, 98, 100, 102).

## II. ADULT ENTERTAINMENT CODE

The definition of an adult entertainment establishment includes adult performance establishments. Adult Entertainment Code, § 3–6(b).[8] Adult performance establishment is defined as follows:

some of the more egregious behavior alleged by Mr. D'Amico and Ms. Fields.

7. The Court notes that Mr. Ward applied for and received such licenses for several other establishments he owns. *See* (Doc. No. 167, at 11).

8. Chapter Three of the Orange County Code is the Adult Entertainment Code, which is submitted at Docket Number 111, Exhibit 2.

*Adult performance establishment* shall mean as follows:

(1) An establishment where a worker:

    a. Engages in a private performance, acts as a private model, or displays or exposes any specified anatomical areas to a customer;

.    .    .    .    .

    c. Offers, solicits or contracts to dance or perform with a customer in consideration for or accepts any tip, remuneration or compensation from or on behalf of that customer; or

    d. Dances or performs with or within three (3) feet of a customer in consideration for or accepts any tip, remuneration or compensation from or on behalf of the customer.

(2) This definition is not intended to apply, and it is an affirmative defense to an alleged violation of this chapter regarding operating an adult performance establishment without a license, if the alleged violator demonstrates either ... (b) that the predominant business or attraction of the establishment is not the offering to customers of a product, service, or entertainment which is intended to provide sexual stimulation or sexual gratification to such customers, and the establishment and its advertising is not distinguished by an emphasis on, or the promotion of, matters or persons depicting, describing, displaying, exposing, simulating or relating to specified sexual activities or specified anatomical areas.

"Sexual gratification" and "sexual stimulation" are also defined in section 3–6. Sexual gratification is defined as follows:

[T]he engaging in or committing of an act of sexual intercourse, oral-genital contact, masturbation, or the touching of the covered or uncovered sexual organ, pubic region, buttock, breast, chest or inner thigh of a person, any of which is for the purpose of arousing or gratifying the sexual desire of another person.

Moreover, sexual stimulation is defined as follows:

[E]ither to excite or arouse the prurient interest or to offer, propose, solicit, or suggest to provide an act of sexual gratification to a customer, including but not limited to all conversations, statements, advertisements and acts which would lead a reasonable person to conclude that an act of sexual gratification was to be provided.

The Adult Entertainment Code also includes extensive findings of fact explaining the purpose of such Code. *See* Code, § 3–5.

## III. STANDARD

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the Court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The Court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 919 (11th Cir.1993) (citation omitted). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates

an issue of material fact, then a court must not grant summary judgment. *Id.* (citation omitted).

The Court notes that only Mr. Ward's facial challenges to the Adult Entertainment Code will be analyzed. *See infra* Part IV. Such challenges do not require the resolution of any factual disputes. *See id.*

## IV. DISCUSSION

This case is essentially a zoning dispute. If Bourbon Street is found to be an adult performance establishment within the meaning of the Adult Entertainment Code, section 3–6, then it is unlikely that Bourbon Street would conform to the zoning requirements contained in sections 3–76 through 3–78. *See* (Doc. No. 111, Exh. 2); *see also* (Doc. No. 5, Pl.'s Mot. for Prelim. Inj., at 2) (acknowledging that Bourbon Street is not zoned for "adult use"). Thus, Defendant is not attempting to ban "swimsuit clubs" or adult performance establishments; rather, it seeks merely to regulate them.

Counsel for Mr. Ward suggests that this case is different from all other reported adult establishment cases holding that reasonable zoning restrictions are constitutional because the dancers at Bourbon Street perform, according to Mr. Ward, fully clothed.[9] Because of this distinction, Mr. Ward believes that he should not be subject to zoning restrictions applicable to establishments in which dancers perform without clothes. In this way, this case represents another attempt by the judiciary to weigh "the individual's right to engage in constitutionally protected activities against the community's right to implement zoning changes to address local concerns." *See 801 Conklin St. Ltd. v. Town of Babylon,* 38 F.Supp.2d 228, 235 (E.D.N.Y.1999).

### A. Facial Challenges

#### 1. Freedom of Speech

Initially, the Court will determine whether the definition of "adult performance establishment" contained in section 3–6 of the Adult Entertainment Code is facially invalid under the First Amendment's guarantee of freedom of speech. Since this is a facial challenge, the Court's analysis will limited to whether Orange County is justified in treating establishments meeting the Code's definition of adult performance establishment differently from those not meeting such definition.

■ The first inquiry in analyzing a freedom of speech question is whether the activity sought to be regulated is protected by the First Amendment *See Redner v. Dean,* 29 F.3d 1495, 1499 (11th Cir.1994). The Eleventh Circuit has held that nude dancing is entitled to "some degree" of First Amendment protection. *See id.* (citing *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (plurality opinion)). Thus, for the purposes of the present case, the Court will assume that fully-clothed dance performances are entitled to "some degree" of First Amendment protection also. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 76, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (striking down ordinance that attempted to ban all live entertainment within its jurisdiction). However, such performances involve only the "barest minimum of protected expression." *See Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

■ If protected activity is present, the second inquiry is whether the restriction is content-based or content-neutral. *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 46–47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Town of Babylon,* 38 F.Supp.2d at 237. If a regulation is content-based, then it "presumptively vio-

---

9. Counsel for Mr. Ward stated that "[t]here is not one case that counsel is aware of that holds that the secondary effects doctrine ap- plies to fully clothed dancing." *See* (Doc. No. 147, at 8).

late[s] the First Amendment." *See Renton*, 475 U.S. at 46–47, 106 S.Ct. 925. However, a regulation that is content-neutral may include reasonable time, place, or manner restrictions if they serve a substantial governmental interest and "do not unreasonably limit alternative avenues of communication." *See id.* at 47, 106 S.Ct. 925.

The *Renton* Court noted that adult use ordinances do not "fit neatly into either the 'content-based' or the 'content-neutral' category" because such ordinances treat performances of an "adult" nature different from those without such emphasis. *See id.* at 47, 106 S.Ct. 925. However, the Court determined that the challenged ordinance was concerned with the "secondary effects of adult theaters, and not with the content of adult films themselves." *See id.* Consequently, the Court held that such ordinance should be "reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations." *See id.* at 48–49, 106 S.Ct. 925.

■ For the reasons that follow, the Court finds that Orange County's Adult Entertainment Code addresses the secondary effects of adult performance establishments rather than the content of the expressive conduct occurring at such establishments. In this regard, the Findings of Facts contained in section 3–5 of the Adult Entertainment Code recite twenty-six different types of secondary effects attendant to the adult uses regulated in such Code. (Doc. No. 111, Exh. 2). These findings of facts were based, in part, on the following studies:

> United States Attorney General's Commission on Pornography (1986), Jacksonville Ordinance Code, Chapter 410, Ord. 77–257–256, § 1, the Los Angeles Municipal Code, § 12.70, Ord. 156509 (1982), the Detroit Zoning Ordinance, 66,0000, Ord. 742–G, § 1, 10–24–72, and "A Summary of a National Survey of Real Estate Appraisers Regarding the Effect of Adult Bookstores on Property Values," conducted by the Division of

Planning, Department of Metropolitan Development, Indianapolis, January 1984.

*See id.,* § 3–5. Moreover, Orange County held over thirty public hearings "pertaining to the adult entertainment industry and sexually oriented business" at which secondary effects were considered. *See* (Doc. No. 167, Pretrial Statement, Admissions, at 8–10). Orange County also held several public hearings on the secondary effects, including prostitution, lewd behavior, and urban decay, specific to "swimsuit clubs." *See id.* at 9–10. Finally, during a public hearing on June 23, 1998, Orange County considered evidence that Bourbon Street in particular was a source of harmful secondary effects. *See id.* at 11.

The United States Supreme Court noted that a county may rely on studies produced by other cities. *See Renton*, 475 U.S. at 50–51, 106 S.Ct. 925. Amplifying this conclusion, the Court stated as follows:

> The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is *reasonably believed to be relevant* to the problem that the city addresses.

*See id.* at 51–52, 106 S.Ct. 925 (emphasis added); *see also Centerfold Club, Inc. v. City of St. Petersburg,* 969 F.Supp. 1288 (M.D.Fla.1997) (applying *Renton* analysis to St. Petersburg, Florida ordinance). Thus, based on the extensive evidence relied upon by Orange County, the Court finds that the Adult Entertainment Code is content-neutral because it is not designed to suppress speech associated with adult uses but to address the secondary effects attendant to such uses.

■ The final inquiry to determine whether an ordinance violates the First Amendment was provided by the Eleventh Circuit as follows:

(1) the interest served is within the power of the government; (2) the regulation furthers that interest; (3) the interest served is unrelated to free expression; and (4) there is no less restrictive alternative.

*See Sammy's of Mobile, Ltd. v. City of Mobile,* 140 F.3d 993, 996–97 (11th Cir. 1998). With regard to the first element, the Eleventh Circuit noted that a county's "interest in protecting the quality of urban life from the secondary effects of adult businesses is indeed substantial." *See International Eateries of Am., Inc. v. Broward County, Fla.,* 941 F.2d 1157, 1162 (11th Cir.1991). The Eleventh Circuit also noted that zoning restrictions similar to those imposed by Orange County's Adult Entertainment Code furthered a county's interest in combating harmful secondary effects. *See id.* In addition, as demonstrated above, Orange County's Adult Entertainment Code is unrelated to the suppression of free speech. Thus, the third element is satisfied. Finally, the Eleventh Circuit has upheld distance requirement similar to those imposed by Orange County. *See id.* at 1163. Based on the foregoing, the Court concludes that the Orange County Adult Entertainment Code satisfies the *Renton* Court's First Amendment analysis.

### 2. Overbreadth

■ Orange County has also moved for summary judgment on Mr. Ward's overbreadth challenge. *See* (Doc. Nos.98–99). In this context, overbreadth "results when lawmakers define the scope of a statute to reach both unprotected expression as well as, at least potentially, protected speech." *See American Booksellers v. Webb,* 919 F.2d 1493, 1503 (11th Cir.1990). Moreover, a regulation will be held facially invalid under the First Amendment only if it is "substantially overbroad, that is, its application would be unconstitutional in a substantial proportion of cases." *See Agan v. Vaughn,* 119 F.3d 1538, 1542 (11th Cir.1997).

■ The gravamen of Mr. Ward's overbreadth argument is that the definition of adult performance establishment includes dancing by fully-clothed individuals within its ambit. The Court has already found that Orange County may implement zoning regulations that affect fully-clothed dancers who perform at establishments otherwise meeting the definition of adult performance establishment. Alternatively, even if such definition were overbroad in some respects, the Court finds that this would not make the definition overbroad "in a substantial proportion of cases." *See id.* Consequently, Mr. Ward has not demonstrated that the Adult Entertainment Code is overbroad in any respect and certainly not in a substantial proportion of cases.

### 3. Vagueness

■ The vagueness doctrine focuses on "whether the law in question affords a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" *See id.* at 1505 (citation omitted). The United States Supreme Court explained the rationale behind precluding overly vague laws as follows:

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications" (footnotes omitted).

See *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

■ The terms "sexual gratification" and "sexual stimulation," as used in Orange County's Adult Entertainment Code, are not unconstitutionally vague. *See Stansberry v. Holmes*, 613 F.2d 1285, 1290 (5th Cir.1980)[10] (noting that such terms are not vague); *see also SDJ, Inc. v. City of Houston*, 636 F.Supp. 1359, 1367 (S.D.Tex.1986) (same), *aff'd*, 837 F.2d 1268 (5th Cir.1988); *IDK, Inc. v. County of Clark*, 836 F.2d 1185, 1197 (9th Cir.1988) (concluding that such terms are not facially invalid). Thus, the Court cannot conclude that the definition of adult performance establishment, which is the subject of Mr. Ward's vagueness challenge, is unconstitutional.

## 4. Arbitrary and Capricious

Mr. Ward claims that the definition of adult performance establishment "is so broad (as applied) that it is subject to arbitrary enforcement." *See* (Doc. No. 134, at 4). Mr. Ward's argument fails for several reasons. First, the Court has rejected Mr. Ward's vagueness challenge. Second, Mr. Ward is challenging the arbitrary enforcement of the ordinance. For the reasons expressed in Part IV.B, *infra*, Mr. Ward's as-applied challenges are not ripe for consideration. Thus, the Court will not examine Mr. Ward's arbitrary and capricious challenge to the extent that it asserts an as-applied challenge to the Adult Entertainment Code. Alternatively, to the extent that Mr. Ward attempts to state a claim for selective enforcement, he has not shown invidiousness or bad faith. *See Fillingim v. Boone*, 835 F.2d 1389, 1399 (11th Cir.1988).

## 5. Shifting of Burden

■ Section 3–6, Adult Entertainment Code, establishes certain affirmative defenses to a charge that an establishment is an adult performance establishment. *See* (Doc. No. 111, Exh. 2). Mr. Ward argues that shifting the burden of proof to an establishment violates the constitution. However, in a similar attack on Orange County's Adult Entertainment Code, the court noted that a licensing authority need not bear the burden of proof. *See Florida Video Xpress, Inc. v. Orange County, Fla.*, 983 F.Supp. 1091, 1098 (M.D.Fla.1997). In this regard, the United States Supreme Court has stated that "[b]ecause the license is the key to the applicant's obtaining and maintaining a business, there is every incentive for the applicant to pursue a license denial through court." *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 229–30, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Thus, the burden of proof may be shifted to the applicant in the licensing context. *See id.* at 230, 110 S.Ct. 596;[11] *see also Steakhouse, Inc. v. City of Raleigh, N.C.*, 166 F.3d 634, 640–41 (4th Cir. 1999) (holding that city could place burden of proof on topless bar to prove the absence of secondary effects); *see also Redner v. Dean*, 29 F.3d 1495, 1500 (11th Cir.1994) (noting in dicta that license applicant may be forced to carry the burden of proof).

## B. As–Applied Challenge

■ Orange County has moved for summary judgment on Mr. Ward's as-applied challenges to the Adult Entertainment Code. *See* (Doc. Nos.96–97). In particular, Orange County argues that Mr. Ward may not challenge the application of the Code because he has not applied for an adult entertainment license and no en-

---

10. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

11. The *FW/PBS, Inc.* Court stated that prompt judicial review is required in a licensing statute. However, Mr. Ward has not argued that Orange County's Adult Entertainment Code is deficient in providing prompt judicial review. Thus, the Court will not address such issue.

forcement proceedings have been brought against him. *See* (Doc. No. 97, at 2–3). According to Orange County, even if Mr. Ward believes that he could not satisfy the zoning requirements contained in the Code, he could request a variance. *See id.* (citing Orange County Code, §§ 3–79, 30–45, 30–46).

Although Orange County cited no case law supporting the dismissal of an as-applied constitutional challenge for lack of ripeness, the Court has located the Eleventh Circuit's decision in *Digital Properties, Inc. v. City of Plantation,* which supports such argument. *See* 121 F.3d 586 (11th Cir.1997). In *Digital Properties,* an adult book and video store was required to exhaust administrative options, including the request of a zoning variance, before "rush[ing] to the courthouse and present[ing] an insufficiently concrete claim." *See id.* at 590–91. Consequently, the as-applied claims were not ripe, and such claims were properly dismissed for lack of subject-matter jurisdiction. *See id.* at 591.

Here, Mr. Ward should not have "rushed to the courthouse." He should have requested an adult entertainment license, including a variance request if his initial request was unsuccessful, before filing suit in this Court. Moreover, the arrests of several dancers and a manager at Bourbon Street for operating or working at an adult entertainment establishment without a license are not relevant for two reasons. First, these individuals are not parties to this case. Second, they were not employees of Mr. Ward or Bourbon Street. Finally, if Mr. Ward had applied for a proper license for Bourbon Street, including the request of a variance, if necessary, the workers may not have been arrested in the first instance. In this way, Mr. Ward's argument that the arrests of the workers satisfy the ripeness inquiry, in reality, underscores his obligation to apply for a proper license before filing suit in this Court. Consequently, Mr. Ward's as-applied claims will be dismissed for lack of subject-matter jurisdiction.

## V. CONCLUSION

Based on the foregoing, the Court rules as follows:

(1) Defendant's Motion for Partial Summary Judgment as to Plaintiff's "As Applied" Claims Based on Ripeness or Lack of Jurisdiction (Doc. No. 16, filed January 19, 1999) is **GRANTED.** Plaintiff's as-applied claims are **DISMISSED** without **PREJUDICE.**

(2) Defendant's Motion for Partial Summary Judgment regarding Definition of "Adult Performance Establishment" (Doc. No. 98, filed January 19, 1999) is **GRANTED.**

(3) Defendant's Motion for Partial Summary Judgment as to the Shifting of the Burden of Proof (Doc. No. 100, filed January 19, 1999) is **GRANTED.**

(4) Defendant's Motion for Partial Summary Judgment as to the Constitutionality of the Orange County Adult Entertainment Code (Doc. No. 102, filed January 19, 1999) is **GRANTED.**

(5) Plaintiff's Motion for Summary Judgment (Doc. No. 133, filed January 26, 1999) is **DENIED.**

(6) Plaintiff's Motion for Review of Magistrate Judge's Discovery Rulings (Doc. No. 160, filed March 1, 1999) is **DENIED as MOOT.**

(7) Defendant's Motion with Memorandum in Support to Strike Late–Filed Affidavit of Kelly Wellnitz (Doc. No. 161, filed March 4, 1999) is **DENIED as MOOT.**

(8) Plaintiff's Motion with Memorandum in Support to Exclude Consideration of Defendant's filings addressing B.G.'s Bar and Crazy Girls for purposes of Summary Judgment (Doc. No. 164, filed March 18, 1999) is **GRANTED.** The Court did not consider the challenged evidence.

(9) Notice of Conflict and Unopposed Motion by Defendant for a Trial Date after the First Week of the May Trial Term

(Doc. No. 166, filed March 31, 1999) is **DENIED as MOOT.**

(10) Defendant's Motion Requesting Court to Decline Supplemental Jurisdiction (Doc. No. 174, filed April 12, 1999) is **DENIED** to the extent that such motion seeks relief greater than that provided elsewhere in this Order.

(11) Request by Defendant with Memorandum in Support for Judicial Notice (Doc. No. 179, filed April 12, 1999) is **GRANTED.**

(12) Plaintiff's Motion to Continue Trial Due to Health Problems (Doc. No. 183, filed April 19, 1999) is **DENIED as MOOT.**

(13) The Clerk is directed to enter Judgment in favor of Defendant and against Plaintiff on all of Plaintiff's claims, except for the as-applied challenges to Orange County's Adult Entertainment Code.

(14) Plaintiff's as-applied challenges to Orange County's Adult Entertainment Code are **DISMISSED without PREJUDICE** due to lack of subject-matter jurisdiction.

(15) The Clerk is directed to **CLOSE** this case.